FILED
12/11/2017
Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 9, 2017 Session

## JOHN HOWARD STORY, ET AL. v. NICHOLAS D. BUNSTINE, ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Knox County**
**No. 1-572-14    Kristi M. Davis, Judge**

_____

**No. E2015-02211-SC-R11-CV**

_____

The defendant attorneys in the instant legal malpractice case, Nicholas D. Bunstine, Brent R. Watson, and Jerrold L. Becker, individually and d/b/a Bunstine, Watson, McElroy & Becker, represented the plaintiffs, John Howard Story and David Bruce Coffey, in a lender liability lawsuit.  In the underlying lender liability lawsuit, the trial court ultimately dismissed the case against two of the lender defendants, and the claims against the remaining lender defendant were later voluntarily dismissed.  Thereafter, the plaintiffs filed the instant lawsuit against the defendant attorneys alleging legal malpractice.  The trial court partially dismissed the case based on the expiration of the one-year statute of limitations for filing a complaint for legal malpractice.  *See* Tenn. Code Ann. § 28-3-104(c)(1). Later, in response to the defendant attorneys' motion for summary judgment, the trial court dismissed the plaintiffs' remaining claim, determining that the claim was also barred by the statute of limitations.  The Court of Appeals affirmed.  We granted this appeal to address:  (1) whether this Court's opinion in *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995), in which we set forth a discovery rule for when the statute of limitations begins to run in a legal malpractice action, should be overruled; (2) whether an interlocutory ruling in underlying litigation constitutes a legally cognizable injury; (3) whether this Court should adopt either the continuous representation rule or the appeal-tolling doctrine for tolling the statute of limitations in legal malpractice actions; and (4) whether a subsequent action of an attorney that renders an interlocutory order final amounts to a separate and discrete act of malpractice such that the statute of limitations for that action does not begin until said action is taken. Following our review, we conclude that *Carvell v. Bottoms* is the accurate analysis for determining when a claim of legal malpractice accrues.  In addition, we decline to adopt the two tolling doctrines proposed by the plaintiffs, and we further decline to hold that the trial court's final judgment in the underlying case is required before there is an actual injury for purposes of the accrual of a claim for litigation malpractice.  Nevertheless, we conclude that, in the case before us, the complaint fails to establish an actual injury prior

to the date of the trial court's final judgment in the underlying case. Consequently, the trial court erred in granting the motion to dismiss and in determining that the plaintiffs' legal malpractice claims were time barred. Finally, we conclude that the trial court also erred in granting the defendants' motion for summary judgment. In this case, the defendant attorneys' alleged negligence, which purportedly rendered the interlocutory order in the underlying case final, constituted a distinct act of malpractice, and as such, the statute of limitations had not run on that claim at the time the plaintiffs filed this legal malpractice action. Therefore, we reverse the judgments of the trial court and the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgments of the Trial Court and the Court of Appeals Reversed; Remanded to Trial Court**

ROGER A. PAGE, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, SHARON G. LEE, AND HOLLY KIRBY, JJ., joined.

David A. Stuart, Clinton, Tennessee, and Mark N. Foster, Madisonville, Kentucky, for the appellants, John Howard Story and David Bruce Coffey.

Darryl G. Lowe, Knoxville, Tennessee, for the appellees, Nicholas D. Bunstine, Brent R. Watson, and Jerrold Lance Becker.

**OPINION**

In this legal malpractice action, John Howard Story and David Bruce Coffey (collectively, "Plaintiffs") appeal from the intermediate appellate court's decision to affirm the trial court's dismissal of their case against their former attorneys Nicholas D. Bunstine, Brent R. Watson, and Jerrold L. Becker, individually and d/b/a Bunstine, Watson, McElroy & Becker (collectively, "Defendants"). The issue before us is whether the legal malpractice action is barred by the applicable statute of limitations under the facts of this case. For the following reasons, we reverse the judgments of the Court of Appeals and the trial court and remand for further proceedings.

**I. FACTS AND PROCEDURAL HISTORY**

**A.**

From 2011 to 2013, Defendants represented Plaintiffs in their lender liability suit against Scott Thompson, First National Bank of Oneida, and People's Bank of the South.

According to Plaintiffs, prior to filing the underlying suit, one of the defendant attorneys, Mr. Becker, represented that Plaintiffs had a strong case with a high likelihood of a six-figure settlement. Nevertheless, on May 7, 2013, the Chancery Court of Scott County, Tennessee, granted summary judgment in favor of two of the underlying defendants, Scott Thompson and First National Bank of Oneida.

Prior to trial on the claims against the remaining bank, Mr. Becker advised that the damages evidence necessary to prosecute the case was not ready and that Plaintiffs should, therefore, voluntarily dismiss the case. According to Plaintiffs, Mr. Becker advised that the case could be refiled within one year but failed to inform Plaintiffs that the voluntary dismissal would render the prior summary judgment order final. Thus, the remaining claims were dismissed by Defendants, on Plaintiffs' behalf, and the trial court entered an order reflecting the voluntary dismissal on November 13, 2013.

Plaintiffs failed to appeal the order granting summary judgment in favor of Mr. Thompson and First National Bank of Oneida, and therefore, Plaintiffs' claims against those underlying defendants were permanently barred.[1] Plaintiffs did not refile their voluntarily dismissed claims against the remaining bank.

**B.**

Rather than refiling their nonsuited claims in the underlying lender liability suit, on September 3, 2014, Plaintiffs filed this legal malpractice action against Defendants in the Circuit Court for Knox County, Tennessee. In their legal malpractice complaint, Plaintiffs alleged, in relevant part:

> 3. Prior to the filing of the lender's liability action . . . [Mr.] Becker, represented to plaintiffs that they had a strong case of liability and damages and that there was a high likelihood the case would ultimately result in a settlement in excess of six figures. He continued to represent . . . that the case was strong . . . throughout the entire time the case was pending, until

---

[1] When the trial court entered an order reflecting Plaintiffs' voluntary dismissal, the interlocutory summary judgment order disposing of the claims against Mr. Thompson and First Bank of Oneida became a final order. *See, e.g.*, *Waste Mgmt., Inc. of Tennessee v. S. Cent. Bell Tel. Co.*, 15 S.W.3d 425, 429 (Tenn. Ct. App. 1997) ("A judgment adjudicating all the claims between all the parties becomes final thirty days after entry . . . ."). Then, when Plaintiffs did not file an appeal of the summary judgment order within 30 days of the trial court's November 13, 2013 order, they lost the right to appeal that decision. *See* Tenn. R. App. P. 4(a) ("In an appeal as of right to the . . . Court of Appeals . . . , the notice of appeal . . . *shall* be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from . . . ." (emphasis added)).

the day he appeared with [Mr.] Watson to explain that they had concluded that the case needed to be voluntarily dismissed.

4. In reality, if plaintiffs had any valid claim at all, it was their claim against Scott Thompson as an individual. The claims against the banks were extremely weak and were subject to a statutory defense . . . . The claims against the banks were also virtually precluded [by] the express written terms of the loan documents . . . and[,] as to one of the bank[s], barred by the statute of limitations.

5. Plaintiffs initially agreed to pay [Mr.] Becker $500.00 per hour . . . , but later, after becoming aware that such an hourly rate was excessive, plaintiffs and [Mr.] Becker agreed to reduce the hourly rate to $375.00. In reliance on the representations . . . that they had a strong lender's liability case, plaintiffs together paid [Mr.] Becker several hundred thousand dollars in attorney fees and expenses.

6. During the course of the proceedings, the question arose as to whether plaintiffs should continue to pay the underlying indebtedness that gave rise to their lender's liability claims. [Mr.] Becker, negligently, carelessly and recklessly advised [] plaintiffs that they should discontinue making their payments, and as a result, plaintiffs were declared in default and have incurred substantial penalties, interest, attorney's fees, expenses, and injury to their credit ratings and reputations.

7. Contrary to the representations of [Mr.] Becker, the lender's liability case was not a strong case at all . . . . After a hearing in which the judge agreed with the contentions of the defendants in the lender's liability action, [Mr.] Becker continued to assure plaintiffs that they had a strong case which would ultimately settle and stated that the judge did not know what he was talking about. [Mr.] Becker assured plaintiffs that he would file motions to force the chancery court to correct its erroneous rulings. After one of the banks and the individual defendant, Scott Thompson, were dismissed from the case, . . . [Mr.] Becker did not inform plaintiffs that the dismissal purported to be a final judgment as to those defendants, and indicated he would file a motion to correct the error. Although such motion was filed, it was never brought on for hearing, and with the ultimate voluntary dismissal of the remaining defendant occurring thereafter, any claims against those defendants became forever barred. As a result, upon voluntary dismissal of the action, [Mr.] Becker and [Mr.] Watson took action which permanently precluded plaintiffs from maintaining their

claims against the only viable defendant . . . , the individual defendant, Scott Thompson.

8. Plaintiffs allege that a reasonable attorney would have warned them prior to filing the lender's liability case that their chances of prevailing in such claims were slim to none, especially against the banks . . . . Plaintiffs further allege that a reasonable attorney would have advised them to continue making payments on the indebtedness pending the resolution of the lender's liability claims, and would have explained that . . . defaulting on the indebtedness would have devastating economic consequences and inflict grievous harm upon the credit rating and reputations of plaintiffs.

Plaintiffs alleged that these and other actions of Defendants amounted to violations of the standard of care of a licensed attorney in the State of Tennessee. As a result, Plaintiffs claimed to have suffered damages in excess of two million dollars. Notably, paragraph 11 of Plaintiffs' complaint stated:

11. In explaining in November, 2013, that they had decided plaintiffs' only option was to voluntarily dismiss their lender's liability action, [Mr.] Watson and [Mr.] Becker, acknowledged that [Mr.] Becker had mishandled the case and was not prepared for trial[.] . . . [Mr.] Becker apologized and stated that he had professional liability coverage if plaintiffs decided to make a professional liability claim.

**C.**

In response to the instant legal malpractice claim, Defendants filed a series of dispositive motions. On October 2, 2014, Defendants filed a motion to dismiss pursuant to Rule 12.02 of the Tennessee Rules of Civil Procedure, asserting that the complaint failed to allege facts sufficient to establish Plaintiffs' causes of action and lacked sufficient specificity and that Plaintiffs' claims were barred by the applicable one-year statute of limitations. *See* Tenn. Code Ann. § 28-3-104(c)(1) ("Actions and suits against . . . attorneys for malpractice shall be commenced within one (1) year after the cause of action accrued, whether the action or suit is grounded or based in contract or tort."). Defendants argued that the statute of limitations began to run on May 7, 2013, the date a judgment was entered dismissing one of the defendant banks and the individual defendant in the underlying case.

Plaintiffs, however, argued in their response to Defendants' motion that the statute of limitations did not begin to run until November 13, 2013, the date on which the order

was entered reflecting Plaintiffs' voluntary dismissal as to the remaining claims. In support of their argument, Plaintiffs characterized the May 7, 2013 order granting summary judgment in favor of two of the underlying defendants as an "interlocutory" order, which did not constitute a final judgment and, according to Plaintiffs, could not have triggered the running of the statute.

The circuit court, on December 10, 2014, partially granted Defendants' motion to dismiss, holding that all of Plaintiffs' claims, with the exception of one, accrued on May 7, 2013, and were barred by the one-year statute of limitations. However, the court further stated that "Plaintiffs' allegations with respect to the November 2013 voluntary dismissal of their remaining claim in the underlying case is a discrete allegation of alleged legal malpractice which is not barred by the statute of limitations and which states a claim upon which relief may be granted."

Following the court's order, Plaintiffs filed an amendment to their complaint in which they alleged that "all of their claims for litigation malpractice and fraud, misrepresentation and deceit against the defendants in this cause are timely filed for purposes of the one year statute of limitations for legal malpractice actions." Seemingly for clarification, Plaintiffs also alleged that on May 31, 2013, Defendants filed a motion to alter or amend the order granting summary judgment in favor of two of the defendants in the underlying lender liability suit but never set the motion for a hearing. Plaintiffs further alleged a claim for "breach of the confidential and fiduciary relationship between plaintiffs and defendants."

Thereafter, Defendants filed a motion for judgment on the pleadings under Tennessee Rule of Civil Procedure 12.03 with respect to Plaintiffs' remaining claim. Defendants contended that Plaintiffs had failed to allege that they suffered any damages as a result of the November 2013 voluntary dismissal and also requested that the circuit court dismiss the claim for "breach of fiduciary duty and confidentiality" because such claim relied on the same operative facts as Plaintiffs' legal malpractice claims.

By order entered February 20, 2015, the court denied Defendants' Rule 12.03 motion in part and granted it in part. Notably, the court reaffirmed its December 10, 2014 order dismissing all of Plaintiffs' claims "with the exception of any cause of action which may exist related to the Order of Voluntary Dismissal entered in the Underlying Case on November 12, 2013." It denied Defendants' motion with respect to Plaintiffs' remaining claim and the alleged absence of pleaded damages, finding the matter better suited to a motion for summary judgment. Conversely, the court granted Defendants' motion as to the portion of Plaintiffs' amended complaint asserting a claim for breach of confidentiality and breach of fiduciary duty.

Following the direction of the circuit court, Defendants next filed a motion for summary judgment in which they again contended that Plaintiffs did not sustain any damages stemming from the voluntary dismissal. On October 19, 2015, the court granted Defendants' motion for summary judgment. The court reasoned that Plaintiffs' assertion that Defendants had misrepresented that the case could be re-filed, particularly against Mr. Thompson, following the voluntary dismissal was a newly asserted claim that had not previously been pleaded and so was barred by the statute of limitations. The court also determined that Plaintiffs' claim that the pending motion to alter or amend the partial summary judgment in the underlying case had been negligently abandoned or lost as a consequence of the voluntary dismissal also was time-barred. It explained that this claim actually arose from the initial May 7, 2013 interlocutory partial summary judgment and so accrued on that date.

**D.**

In the legal malpractice case, Plaintiffs appealed the circuit court's orders partially granting Defendants' motion to dismiss, partially granting Defendants' motion for judgment on the pleadings, and granting Defendants' motion for summary judgment. The Court of Appeals affirmed the circuit court's decision to grant Defendants' motion to dismiss; however, it concluded that, upon Defendants' October 2, 2014 motion to dismiss, the circuit court should have dismissed the legal malpractice complaint in its entirety. *Story v. Bunstein*, No. E2015-02211-COA-R3-CV, 2016 WL 3344795, at *7 (Tenn. Ct. App. June 9, 2016), *perm. app. granted* (Tenn. Nov. 17, 2016).[2]

The court explained that Plaintiffs "had sufficient knowledge of an injury, which was likely based on some legal malpractice, on May 7, 2013, when their claims against National Bank of Oneida and Scott Thompson were dismissed." *Id.* As such, the appellate court held, the statute of limitations on the legal malpractice claims began to run on that date. *Id.* Because the Court of Appeals determined that Plaintiffs' complaint should have been dismissed "*in toto*, upon the running of the statute of limitations," it found the remaining issues to be pretermitted. *Id.*

We granted Plaintiffs' application for permission to appeal.

---

[2] We note that the Court of Appeals incorrectly spelled Defendant Mr. Bunstine's surname. This appears to have derived from the same incorrect spelling of this party's name on certain trial court documents, including the Plaintiffs' complaint.

## II. STANDARD OF REVIEW

This is an appeal from both the circuit court's grant of a motion to dismiss for failure to state a claim and its grant of a motion for summary judgment.[3] Our review of a dismissal for failure to state a claim under Rule 12.02 of the Tennessee Rules of Civil Procedure requires us to take the allegations in the complaint as true. *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002). This is because a motion filed under Rule 12.02(6) tests "the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). By filing their motion to dismiss, Defendants effectively "admit[ted] the truth of all of the relevant and material allegations contained in the complaint, but . . . assert[ed] that the allegations fail to establish a cause of action." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 516 (Tenn. 2005). As such, courts "should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Crews*, 78 S.W.3d at 857. On appeal, we review the "trial court's decision to dismiss a petition for failure to state a claim . . . de novo with no presumption of correctness." *Metro. Gov't of Nashville v. Bd. of Zoning Appeals of Nashville*, 477 S.W.3d 750, 754 (Tenn. 2015).

Likewise, we review the grant of a motion for summary judgment de novo with no presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Under Rule 56.04 of the Tennessee Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. On appeal, we must determine whether the moving party satisfied its burden of production "(1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015).

---

[3] As noted above, Plaintiffs' amended complaint in the lender liability suit included a claim for "breach of the confidential and fiduciary relationship between plaintiffs and defendants." In response, Defendants filed a Rule 12.03 motion for judgment on the pleadings, which the trial court granted as to the portion of Plaintiffs' amended complaint asserting a claim for breach of confidentiality and breach of fiduciary duty. Plaintiffs, however, did not raise the circuit court's order partially granting Defendants' motion for judgment on the pleadings in their application for permission to appeal to this Court. Therefore, we only consider the orders partially granting Defendants' motion to dismiss and granting Defendants' motion for summary judgment.

- 8 -

## III. ANALYSIS

### A. ACCRUAL OF LEGAL MALPRACTICE ACTIONS

#### 1. Current Law: The Discovery Rule

The present action involves claims of legal malpractice. Tennessee Code Annotated section 28-3-104(c)(1), Tennessee's statute of limitations for legal malpractice claims, requires that the action be filed "within one (1) year after the cause of action *accrued . . . .*" Tenn. Code Ann. § 28-3-104(c)(1) (emphasis added). As this Court has previously explained, "The concept of accrual relates to the date on which the applicable statute of limitations begins to run." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 457 (Tenn. 2012) (citing *Columbian Mut. Life Ins. Co. v. Martin*, 136 S.W.2d 52, 56 (Tenn. 1940)). Although the statute does not define the point of accrual, in legal malpractice cases, as is also true in medical malpractice cases, the date that the statute of limitations begins to run is determined by applying the discovery rule. *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998); *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998).

This Court previously summarized Tennessee's discovery rule in *John Kohl & Company P.C. v. Dearborn & Ewing*:

> Under this rule, a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant.
>
> In legal malpractice cases, the discovery rule is composed of two distinct elements: (1) the plaintiff must suffer legally cognizable damage—an actual injury—as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct. An actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of a liability. An actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer "some actual inconvenience," such as incurring an expense, as a result of the defendant's negligent or wrongful act. However, the injury element is not met if it is contingent upon a third party's actions or amounts to a mere possibility.
>
> The knowledge component of the discovery rule may be established by evidence of actual or constructive knowledge of the injury.

Accordingly, the statute of limitations begins to run when the plaintiff has actual knowledge of the injury as where, for example, the defendant admits to having committed malpractice or the plaintiff is informed by another attorney of the malpractice. Under the theory of constructive knowledge, however, the statute may begin to run at an earlier date—whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct. We have stressed, however, that there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard. Rather, the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct. It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial. A plaintiff may not, of course, delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff. Allowing suit to be filed once all the injurious effects and consequences are known would defeat the rationale for the existence of statutes of limitations, which is to avoid the uncertainties and burdens inherent in pursuing and defending stale claims.

*Kohl*, 977 S.W.2d at 532-33 (citations and internal quotation marks omitted).

Although reiterated and succinctly stated in *Kohl*, Tennessee's "specific formulation of the 'discovery rule'" was first formally adopted over twenty years ago in *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). The *Carvell* court summarized our prior decisions[4] and concluded that the "two distinct elements" of the discovery rule, at that time, could be summarized as follows: "(1) the plaintiff must suffer . . . *an 'irremediable injury'* as a result of the defendant's negligence; and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by defendant's negligence." *Id.* at 28 (emphasis added) (citing *Chambers v. Dillow*, 713 S.W.2d 896, 898-99 (Tenn. 1986); *Sec. Bank & Tr. Co. of Ponca City, Okl. v. Fabricating, Inc.*, 673 S.W.2d 860, 864-65 (Tenn. 1983); *Ameraccount Club, Inc. v. Hill*, 617 S.W.2d 876, 878-79 (Tenn. 1981)). However, the Court went on to reject future use of the "irremediable injury" nomenclature because the term, "which was first used in

---

[4] The in-depth history of the development of the discovery rule in Tennessee has been explored more than once by the appellate courts of this State. *See, e.g.*, *Wilson v. Mathes*, 15 S.W.3d 865, 868-71 (Tenn. Ct. App. 1999).

pure dicta by the *Ameraccount* court, has caused confusion from its inception and serves no useful purpose." *Id.* at 29-30. Instead, the Court adopted the "legally cognizable injury" or "actual injury" nomenclature used today, as expressed in *Kohl*. *Id.* at 30.

In addition, though not directly implicated in the case before us, the statute imposing the one-year statute of limitations in legal malpractice actions also contains a statute of repose. Tennessee Code Annotated section 28-3-104(c)(2) provides:

> In no event shall any action or suit against a licensed public accountant, certified public accountant or attorney be brought more than five (5) years after the date on which the act or omission occurred, except where there is fraudulent concealment on the part of the defendant, in which case the action or suit shall be commenced within one (1) year after discovery that the cause of action exists.

Thus, the discovery rule does not apply to the five-year statute of repose except in cases involving fraudulent concealment by the defendant attorney.

### 2. Proposed Tolling Doctrines

On appeal, Plaintiffs advocate for the adoption of one of two alternative tolling doctrines. The applicability of any relevant tolling doctrines is a concept distinct from the accrual of the cause of action. Rather than defining the date on which the statute of limitations begins to run, tolling doctrines can "suspend or extend the running of the limitations period." *Redwing*, 363 S.W.3d at 459. There are several recognized tolling doctrines applicable to the accrual of a cause of action for legal malpractice,[5] but

---

[5] Fraudulent concealment is one such tolling doctrine. As stated in Tennessee Code Annotated section 28-3-104(c)(2), this doctrine is applied by statute to the five-year statute of repose, but it is also applied by common law to the one-year statute of limitations. *See Hartman v. Rogers*, 174 S.W.3d 170, 173 (Tenn. Ct. App. 2005). "Under the fraudulent concealment doctrine, the statute of limitations is tolled when 'the defendant has taken steps to prevent the plaintiff from discovering he [or she] was injured.'" *Redwing*, 363 S.W.3d at 462 (quoting *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 146 (Tenn. 2001)). Here, Plaintiffs take issue with Defendants' actions in continuing to reassure them that they had a strong lender liability case and that the trial judge would reverse the erroneous ruling dismissing two of the underlying defendants. However, Plaintiffs acknowledged at oral argument that the present case does not involve the doctrine of fraudulent concealment and instead argue that Defendants' statements are relevant to the discovery rule's knowledge prong.

Plaintiffs point to two that have yet to be adopted by Tennessee courts: the continuous representation tolling doctrine and the appeal-tolling doctrine.

Here, Plaintiffs contend that we should adopt the appeal-tolling doctrine specifically rejected by this Court in *Carvell*. In that case, the plaintiffs proposed a rule stating that "where an ongoing lawsuit implicates the conduct of a lawyer, and where the viability of a malpractice claim depends on the outcome of this underlying suit, the statutory period of limitations should be tolled until all the appellate proceedings of the underlying suit have been completed." *Carvell*, 900 S.W.2d at 29.

In other words, Plaintiffs support a "final resolution rule," whereby the limitation period for their cause of action would be suspended until the final conclusion of the underlying litigation, including during the pendency of an appeal. However, as stated, this Court specifically rejected this exact argument in our seminal case on the discovery rule in legal malpractice actions, concluding that such an appeal-tolling doctrine was simply "not supported by our cases."[6] *Id.* As *Carvell* makes clear, rejection of this doctrine was an intended and natural consequence of the change from the "irremediable injury" requirement to that of an "actual" or "legally cognizable injury."[7] *Id.* at 29-30.

Moreover, the appeal-tolling doctrine has been consistently rejected by subsequent appellate decisions in this State. *See, e.g.*, *Cherry v. Williams*, 36 S.W.3d 78, 85 (Tenn. Ct. App. 2000); *Bradson Mercantile, Inc. v. Crabtree*, 1 S.W.3d 648, 653 (Tenn. Ct. App. 1999); *Wilkins v. Dodson, Parker, Shipley, Behm & Seaborg*, 995 S.W.2d 575, 580-81 (Tenn. Ct. App. 1998). In fact, in *Cherry v. Williams*, the Court of Appeals noted that only "a minority of American jurisdictions allow tolling of the statute of limitations pending an appeal." *Cherry*, 36 S.W.3d at 85; *see also* 3 Ronald E. Mallen, *Legal Malpractice* § 23:40 (2017 ed.) ("Although there is jurisdictional inconsistency, most courts have concluded that a cause of action for presently identifiable damages is not suspended or otherwise tolled pending an appeal or motion by the injured party.").

---

[6] Although it is not an argument raised by Plaintiffs in the case before us, the *Carvell* court also explained that the appeal-tolling doctrine was not necessary to avoid risk of the application of judicial estoppel from the taking of inconsistent positions in the underlying case and the legal malpractice case. *Carvell*, 900 S.W.2d at 30 ("[C]lients can avoid the discomfort of maintaining inconsistent positions by filing a malpractice action against the attorney and requesting that the trial court stay that action until the underlying proceedings are concluded." (citations and internal quotation marks omitted)).

[7] The plaintiffs/clients in *Carvell* argued that their injury had not yet become "irremediable" because they had not exhausted all possible appeals in the underlying lawsuit. *Carvell*, 900 S.W.2d at 29-30. The Court rejected their argument, stating that "our cases establish that the injury need not be 'irremediable' in the sense urged by the plaintiffs," and went on to reject further use of the "irremediable" language. *Id.*

Although Plaintiffs argue that the appeal-tolling doctrine is the "clearest rule this Court could enact to avoid disputes . . . regarding when the statute of limitations commences,"[8] we again take this opportunity to reiterate that Tennessee does not follow this minority rule, and Plaintiffs have failed to point to a reason, beyond its simplicity, for this Court to adopt it. We conclude that the appeal-tolling doctrine's simplicity is outweighed by the policies favoring the current formulation of the discovery rule—namely the discovery rule's flexibility and avoidance of unreasonable delay, which we will discuss in more detail below.

Next, we consider Plaintiffs' request that we instead adopt the continuous representation tolling doctrine, commonly known as the "continuous representation rule." "The effect of the [continuous representation] rule is to toll the statute of limitations . . . 'in an attorney malpractice case . . . until the attorney's representation concerning a particular transaction is terminated.'" Mallen, § 23:44 (quoting *Grago v. Robertson*, 370 N.Y.S.2d 255, 259 (N.Y. App. Div. 1975)).

This doctrine originated in the medical malpractice "continuous treatment" doctrine and is recognized by a majority of jurisdictions, though it has been rejected or has yet to be adopted by a significant minority. *Id.* §§ 23:44, 23:45. Approximately nineteen jurisdictions have specifically rejected the continuous representation rule. *See id.* § 23:45 n.2. However, a number of others, thus far, have simply not adopted it. *See, e.g.*, *Feddersen v. Garvey*, 427 F.3d 108, 114 (1st Cir. 2005) (noting that the New Hampshire Supreme Court has not adopted the rule); *Sharts v. Natelson*, 885 P.2d 642, 647 (N.M. 1994) (discussing the continuous representation rule but noting that New Mexico has not adopted the doctrine).

"The continuous representation doctrine was developed primarily in response to the harsh consequences of the occurrence rule. . . ." *DeLeo v. Nusbaum*, 821 A.2d 744, 748 (Conn. 2003); *see also Shipman v. Kruck*, 593 S.E.2d 319, 324 (Va. 2004). Under the occurrence rule for accrual, as opposed to the discovery rule, the "statute of limitations starts to run on occurrence of the essential facts constituting the cause of action, regardless of whether these facts are discovered by the client." Ronald E. Mallen, *Limitations and the Need for "Damages" in Legal Malpractice Actions*, 60 Def. Couns. J. 234, 234 (1993).

---

[8] Though Plaintiffs endorse the appeal-tolling doctrine's simplicity, they evidently fail to consider the effect of the applicable statute of repose. Even if we chose to adopt this rule, the five-year statute of repose might cut off claims prior to their accrual for statute of limitations purposes in certain cases. *See* Tenn. Code Ann. § 28-3-104. Plaintiffs, however, did not address this possibility.

Requiring a client to commence a legal malpractice action before the relationship concludes under the occurrence system "would encourage the client constantly to second-guess the attorney and . . . obtain other legal opinions on the attorney's handling of the case" whether or not the client has actually been injured. *Rosenfield v. Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, 795 A.2d 572, 581 (Conn. App. Ct. 2002). Consequently, many jurisdictions have adopted the continuous representation rule to preserve the attorney-client relationship. *See, e.g.*, *DeLeo*, 821 A.2d at 594-96; *Siegel v. Kranis*, 288 N.Y.S.2d 831, 834-35 (N.Y. App. Div. 1968).

It is notable, however, that in several states recognizing the continuous representation doctrine, the rule does not apply where the plaintiff/client has actual knowledge of the attorney's wrongdoing. *See DeLeo*, 821 A.2d at 751 (explaining that Connecticut's continuous representation rule "only tolls the statute of limitations for as long as either the plaintiff does not know of the alleged malpractice or the attorney may still be able to mitigate the harm allegedly caused"); *Vinci v. Byers*, 837 N.E.2d 1140, 1145 (Mass. App. Ct. 2005) ("The doctrine has no application, however, where the client actually knows that he suffered appreciable harm as a result of his attorney's conduct. If the client has such knowledge, then there is no innocent reliance which the continued representation doctrine seeks to protect." (citations and internal quotation marks omitted)); *Guinn v. Murray*, 837 N.W.2d 805, 817 (Neb. 2013) ("[T]he continuous representation rule is inapplicable when the claimant discovers the alleged negligence prior to the termination of the professional relationship.").

In advocating for the adoption of the continuous representation rule in Tennessee, Plaintiffs cite concerns with disruption of the attorney-client relationship under the current discovery rule. They argue that clients should be able to trust their lawyers and should not have to second guess their lawyer's judgment during the representation. Plaintiffs further note that the continuous representation rule would have the positive effect of allowing allegedly negligent lawyers the opportunity to attempt to remedy an unfavorable result.

However, this rule, under which the limitations period is tolled during the continued representation of the client by the offending attorney, has also been rejected by our appellate courts. In *Cherry v. Williams*, the Court of Appeals, in an opinion authored by then-Judge Koch, rejected this argument as inconsistent with the discovery rule, explaining:

> [The plaintiff's] "continuing representation" argument is similar to the "continuing treatment" doctrine formerly recognized in medical malpractice cases. In the medical malpractice context, the Tennessee Supreme Court has now held that the continuing treatment exception has

- 14 -

been subsumed into the discovery rule. Thus, the [C]ourt has stated that "[i]f there is actual proof that the patient knows or reasonably should know of the injury or harm before termination of the medical treatment, the statute of limitations is not tolled." *Stanbury v. Bacardi*, 953 S.W.2d 671, 676 (Tenn. 1997).

> We perceive no reason for adopting a different rule for legal malpractice cases, especially now that the Tennessee Supreme Court has held that the discovery rule in legal malpractice cases operates in essentially the same way that the discovery rule in medical malpractice cases operates. *Compare Carvell* [], 900 S.W.2d at 28 (holding that discovery occurs when "the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by [the] defendant's negligence") *with Shadrick* [], 963 S.W.2d [at] 733 [] (holding that discovery occurs when the plaintiff "discovered, or reasonably should have discovered, (1) the occasion, the manner, and the means by which a breach of duty occurred that produced his injuries; and (2) the identity of the defendant who breached the duty").

36 S.W.3d at 87; *cf. Rosenfield*, 795 A.2d at 581 ("We conclude that we should adopt the continuous representation doctrine for several reasons. First, we already permit tolling of the statute of limitations under the continuing course of conduct and continuous treatment doctrines, which are very similar in policy and application . . . ."); *Grago v. Robertson*, 370 N.Y.S.2d 255, 259 (N.Y. App. Div. 1975) (noting that in New York, "the concept of continuous treatment concerning medical malpractice cases has been properly incorporated into the attorney malpractice area"); *Keaton Co. v. Kolby*, 271 N.E.2d 772, 774 (Ohio 1971) *overruled on other grounds by Skidmore & Hall v. Rottman*, 450 N.E.2d 684 (Ohio 1983) ("[T]here is no logical basis for treating doctors and attorneys differently . . . .").

> Since then, our appellate courts have continued to reject the application of the continuing representation rule in this context, "rel[ying] on [this Court's] decision that the analogous 'continuing treatment' theory in medical malpractice cases has been subsumed into the discovery rule." *Tenn-Fla Partners v. Shelton*, 233 S.W.3d 825, 830 (Tenn. Ct. App. 2007); *see also Channel v. Loyacono*, 954 So. 2d 415, 421 (Miss. 2007) (concluding that the discovery rule precluded application of the continuous representation rule).

Despite the validity of Plaintiffs' concerns, we remain unconvinced that a deviation from our current rule is justified.[9] Like the Court of Appeals, we do not see a reason to reverse our decisions aligning the discovery rule in legal malpractice cases with the discovery rule in medical malpractice cases. Unlike several of the jurisdictions adopting the continuous representation rule, Tennessee does not recognize the continuing treatment doctrine in medical malpractice cases. Rather, rejection of the continuous representation rule is consistent with our previous holding that the continuous treatment rule is subsumed by the discovery rule in medical malpractice cases. *See Stanbury*, 953 S.W.2d at 676.

Also, at least two of the concerns raised by Plaintiffs—that during the underlying litigation the client may have no reason to distrust the lawyer and that the client may remain unaware of the lawyer's error—are addressed under our current system. As we explained in both *Carvell* and in *Kohl*, our discovery rule requires either the client's actual or constructive knowledge before the statute of limitations in a legal malpractice case begins to run. This ensures that the plaintiff does not face the possibility that the one-year bar will prevent his or her claims until "the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct." *Kohl*, 977 S.W.2d at 532; *see also DeLeo*, 821 A.2d at 751 ("Tolling the statute while the plaintiff lacks actual knowledge of the alleged malpractice serves the purpose of not requiring the client to second-guess his attorney."). Moreover, the fraudulent concealment doctrine, which acts to toll the running of the statute of limitations (and the statute of repose) in legal malpractice cases, *Redwing*, 363 S.W.3d at 462, further protects the client from an attorney's intentional concealment of a potential cause of action. *See Omni-Food & Fashion, Inc. v. Smith*, 528 N.E.2d 941, 944 (Ohio 1988) (noting concern that "[s]trict adherence to the discovery rule . . . potentially encourages an unscrupulous attorney to conceal his or her malpractice until that time when the statute of limitations has run its course.").

We further note that Tennessee's five-year statute of repose, Tennessee Code Annotated section 28-3-104, would undermine the adoption of the continuous representation rule. Because the statute only provides an exception for fraudulent concealment on the part of the attorney, even if we did adopt the continuous

---

[9] At oral argument, Plaintiffs suggested that adoption of the continuous representation rule was not inconsistent with our current formulation of the discovery rule in this State. However, in their brief, Plaintiffs appear to advocate for the tolling of the statute of limitations during the attorney's continued representation even if the client is fully aware of the lawyer's error. We, therefore, disagree with the argument that the adoption of the continuous representation rule, as it is presented by Plaintiffs, would leave our discovery rule unchanged.

representation rule in Tennessee, it is reasonable to assume that many claims would be cut off by the statute of repose prior to the conclusion of the attorney's representation of the plaintiff/client.

Thus, we decline to adopt the continuous representation rule to toll the running of the statute of limitations in legal malpractice cases and instead conclude, as did the Court of Appeals in *Cherry*, that

> a litigant who learns that it has suffered a cognizable legal injury and that this injury was caused by the negligence of its lawyer but who nevertheless continues to be represented by that lawyer will be forever barred from bringing suit against the lawyer unless it files suit within one year after the discovery of the injury and its cause.

36 S.W.3d at 87.

### 3. Final Judgment as a Bright-Line Test for Actual Injury

Alternatively, Plaintiffs urge this Court to abandon its longstanding test for determination of the point of accrual for a legal malpractice cause of action, as articulated in *Carvell* and reiterated in *Kohl*, or, at least, to alter it. Plaintiffs raise the specific issue of when the actual or legally cognizable injury occurs for the purpose of accrual of a legal malpractice action. They suggest that this Court should hold that a non-final order, such as the May 7, 2013 order granting summary judgment in favor of two of the three underlying defendants, cannot serve as the point of actual or legally cognizable injury and so as the triggering point for accrual of the cause of action. Instead, Plaintiffs advocate for a bright-line rule for determining the point of injury in the context of litigation malpractice claims: the trial court's entry of a final judgment.

As stated above, this Court has held that the client is required to have suffered some injury before the cause of action for legal malpractice accrues. *Carvell*, 900 S.W.2d at 28; *Kohl*, 977 S.W.2d at 532. As such, a key consideration is the determination of the point at which the actual or legally cognizable injury is deemed to have occurred. As the Court of Appeals has explained:

> Determining when a legally cognizable injury has occurred can often be accomplished without too much difficulty when the lawyer's allegedly negligent act or failure to act occurs outside of litigation. However, the task becomes more difficult when the lawyer's act or failure to act occurs during the course of litigation.

. . .

> . . . [T]he rules governing when a person suffers legally cognizable injury from litigation malpractice must take into account that not every misstep leads to a fall. Because negligence without injury is not actionable, the legal malpractice statute of limitations does not begin to run until an attorney's negligence has actually injured the client.

*Cherry*, 36 S.W.3d at 83-84 (citations omitted).

Our appellate courts have recognized that the entry of a judgment is effectively the default point of actual injury in the context of litigation malpractice. The Court of Appeals went on to note in *Cherry*:

> In litigation, the most easily identifiable time when rights, interests, and liabilities become fixed is when a court enters judgment. A judgment, after all, is "an adjudication of the rights of the parties in respect to the claim[s] involved." Accordingly, most courts have made the entry of an adverse judgment the starter pistol for the running of the statute of limitations on litigation malpractice. It is a court's judgment that decrees the loss of a right or remedy or imposes a legal liability. Thus, when a judgment is entered, a "legally cognizable injury" occurs.

*Id.* at 84-85 (alterations in original) (citations omitted).

Still, our courts have consistently declined to adopt the entry of a final judgment as the absolute, bright-line point of injury and accrual. Although this Court stated in *Kohl* that "[a]n actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of a liability," we also made clear that "[a]n actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer 'some actual inconvenience,' such as incurring an expense, as a result of the defendant's negligent or wrongful act." *Kohl*, 977 S.W.2d at 532 (citations omitted); *see also Hartman v. Rogers*, 174 S.W.3d 170, 174 (Tenn. Ct. App. 2005) ("The standard for accrual of the cause of action is 'legally cognizable' not 'final disposition'."). Relying on this language in *Kohl*, our intermediate appellate court has more than once refused to limit the point of occurrence of an actual injury in the litigation malpractice context to the entry of a final judgment. *Cardiac Anesthesia Servs., P.L.L.C. v. Jones*, 385 S.W.3d 530, 543 (Tenn. Ct. App. 2012) ("[T]he Tennessee Supreme Court has held that damage need not be the entry of an order adverse to the client, but may consist of the plaintiff being forced to take some action or otherwise suffer some actual inconvenience, such as incurring an expense, as a result of the defendant's negligent or wrongful act." (internal

quotation marks omitted)); *Honeycutt v. Wilkes, McCullough & Wagner*, No. W2007-00185-COA-R3-CV, 2007 WL 2200285, at *6 (Tenn. Ct. App. Aug. 2, 2007) ("Although some courts have made the entry of an adverse judgment against a client the starter pistol for the running of the statute of limitations on legal malpractice claims, . . . in Tennessee, the statute of limitations begins to run when a 'legally cognizable injury' occurs, even if an adverse judgment has yet to be rendered."); *Willson v. Wohlford*, No. E2004-02020-COA-R3-CV, 2005 WL 1183152, at *5 (Tenn. Ct. App. May 19, 2005) ("[N]either *Cherry*, nor any other case cited by [the plaintiff] or revealed by our research, stands for the blanket proposition that under no circumstances will a plaintiff's malpractice action be held to have accrued before entry of final judgment in the underlying case.").

In support of their argument, Plaintiffs argue that the final judgment rule for which they advocate "would have the benefits of clarity and consistency" and that the inverse of this rule—that an interlocutory or non-final ruling by the trial court may serve as the "starter pistol" for the running of the statute of limitations—is inconsistent "with the rule applicable in all litigation, which is that rights and remedies are not lost by trial court rulings short of a final judgment." *See Davidson v. Baydoun*, No. M2008-02746-COA-R3-CV, 2009 WL 2365563, at *7 (Tenn. Ct. App. July 31, 2009) ("[T]he [non-final] order of dismissal, which was entered during litigation, was interlocutory, non-appealable and subject to modification or reversal by the trial court." (citations and internal quotation marks omitted)).

Even so, we conclude that, on balance, the policies favoring each rule weigh in favor of the rejection of the absolute, bright-line approach posited by Plaintiffs. The final judgment rule is undoubtedly simplistic. The United States District Court for the Middle District of Tennessee, applying Tennessee law, recently noted:

> Utilizing the final decision on the merits . . . as the benchmark for when a statute of limitations begins to run is remarkable in its simplicity because it provides a clear-cut triggering point for the statute of limitations. But it may be too simplistic because, as noted, there can be various missteps during the course of litigation . . . .

*Allied Waste N. Am., Inc. v. Lewis, King, Krieg & Waldrop, P.C.*, 93 F. Supp. 3d 835, 845 (M.D. Tenn. 2015).

We agree that deeming the entry of a final judgment as the absolute point of actual injury is too simplistic. Our current formulation of the discovery rule is preferable because it allows the trial court's entry of a final judgment to essentially act as a default point of actual injury and accrual. Conversely, it also provides the flexibility to consider, on a case-by-case basis, whether the client/plaintiff had already suffered some degree of

- 19 -

actual injury prior to a final judgment in the underlying litigation. For example, the client may have incurred additional effort and expense in attempting to rectify the alleged negligence in the course of the underlying proceedings, and in such a case, the cause of action for legal malpractice accrues prior to a final judgment.

The flexibility afforded by our current rule is particularly beneficial in those cases in which the alleged malpractice occurred early in the underlying litigation. Although the five-year statute of repose, Tennessee Code Annotated section 28-3-104(c)(2), provides some level of protection against extreme delay, the injury requirement, as it stands, can avoid a delay of what could be several years before the underlying litigation is concluded by a final judgment. Such delay "would defeat the rationale for the existence of statutes of limitations, which is to avoid the uncertainties and burdens inherent in pursuing and defending stale claims." *Kohl*, 977 S.W.2d at 533 (citing *Wyatt v. A-Best, Co.*, 910 S.W.2d 851, 855 (Tenn. 1995)).

Furthermore, the lower courts of this State have demonstrated that the current flexible standard of our discovery rule in Tennessee is workable. The date of actual injury and accrual is often found to have been prior to the date of the entry of a final judgment in the underlying litigation. *See, e.g.*, *Cardiac Anesthesia Servs, P.L.L.C.*, 385 S.W.3d at 543; *Honeycutt*, 2007 WL 2200285, at *6-7; *Willson*, 2005 WL 1183152, at *6-7. However, our courts have also recognized that in certain cases the client did not suffer an actual injury prior to the entry of a final judgment. *See, e.g.*, *Davidson*, 2009 WL 2365563, at *6; *Cherry*, 36 S.W.3d at 85; *Tanaka v. Meares*, 980 S.W.2d 210, 213 (Tenn. Ct. App. 1998).

Therefore, we decline to hold that a final judgment in the underlying case is required before there is an actual injury for purposes of the accrual of a litigation malpractice claim. Instead, we reiterate that under Tennessee's discovery rule, in addition to the actual or constructive knowledge requirement, the plaintiff must suffer an actual or legally cognizable injury, which depending on the particular facts may or may not occur prior to a final judgment.

B. APPLICATION

In light of our decision to reject the proposed tolling doctrines and reaffirm the existing formulation of the discovery rule for the accrual of legal malpractice claims in Tennessee, we now turn to Plaintiffs' final arguments.

As explained above, the circuit court dismissed Plaintiffs' legal malpractice claims that were based on Defendants' alleged negligence in encouraging Plaintiffs to pursue certain meritless legal claims against the two banks in the underlying litigation and in

allowing the claim against Mr. Thompson, the individual underlying defendant, to be dismissed by summary judgment on May 7, 2013. Following the circuit court's order granting Defendants' motion to dismiss in the present legal malpractice case, Plaintiffs' only remaining legal malpractice claim related to Defendants' alleged negligence in recommending the voluntary dismissal of the underlying case in November 2013. The circuit court granted Defendants' motion for summary judgment on this remaining claim.

The Court of Appeals affirmed the circuit court but determined that all of the claims should have been addressed pursuant to Tennessee Rule of Civil Procedure 12.02(6). *Story*, 2016 WL 3344795, at *4, *7. It concluded that all of Plaintiffs' claims accrued and the statute of limitations began to run as of the May 7, 2013 interlocutory partial summary judgment. *Id.* at *7. In doing so, the court determined that, as of that date, Plaintiffs had suffered actual injury and had knowledge of the alleged malpractice causing the injury. *Id.*

After considering Plaintiffs' arguments, we agree that the decisions of the courts below must be reversed on procedural grounds.

### 1. Circuit Court's Grant of Defendants' Motion to Dismiss

With regard to Defendants' motion to dismiss and the corresponding order, Plaintiffs contend that the decisions of the circuit court and the Court of Appeals should be overturned because, even under the current discovery rule, the complaint and amendment thereto are sufficient as a matter of law to establish a cause of action for legal malpractice despite the one-year statute of limitations.

We have previously stated that a motion to dismiss under Tennessee Rule of Civil Procedure 12.02(6) "is *an* appropriate way to seek to invoke the statute of limitations as grounds for dismissing a complaint." *Redwing*, 363 S.W.3d at 455 n.11 (emphasis added). But for such a motion "to be used as a vehicle to assert an affirmative defense,[10] the applicability of the defense must 'clearly and unequivocally appear[ ] on the face of the complaint.'" *Jackson v. Smith*, 387 S.W.3d 486, 491-92 (Tenn. 2012) (footnote added) (quoting *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 404 (Tenn. 2002). "In other words, the plaintiff's own allegations in the complaint must show that an affirmative defense exists and that this defense legally defeats the claim for relief." *Id.* at 492 (citations omitted).

---

[10] The statute of limitations is an affirmative defense. *See* Tenn. R. Civ. P. 8.03.

- 21 -

Here, contrary to the conclusion of the Court of Appeals, the face of the complaint fails to establish the statute of limitations defense. As explained above, Plaintiffs filed their legal malpractice claim on September 3, 2014. Defendants argue that Plaintiffs suffered an actual or legally cognizable injury on May 7, 2013, when the trial court granted summary judgment as to one of the banks and the individual defendant. Therefore, according to Defendants, Plaintiffs' legal malpractice case was filed more than a year after their cause of action accrued and, as such, was time barred.

The Court of Appeals agreed with Defendants below, stating, "Here, [Plaintiffs] suffered an actual injury . . . when the trial court granted summary judgment in favor of First National Bank of Oneida and Scott Thompson on May 7, 2013. At that point, [Plaintiffs] had lost their case as to these defendants." *Story*, 2016 WL 3344795, at *6. However, as Plaintiffs have continued to argue, the circuit court and the Court of Appeals both misconstrued the true legal effect of the trial court's grant of summary judgment against the two defendants. Rule 54.02 of the Tennessee Rules of Civil Procedure provides in relevant part:

> [A]ny order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties *shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties*.

Tenn. R. Civ. P. 54.02 (emphasis added).

Consequently, the May 2013 order granting summary judgment was not a final judgment, and as such, it did not terminate the action, even as to First National Bank of Oneida and Mr. Thompson. *See State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997) ("An interim order is one that adjudicates an issue preliminarily; while a final order fully and completely defines the parties' rights with regard to the issue, leaving nothing else for the trial court to do. Until a judgment becomes final, it remains within the [trial] court's control and may be modified any time prior to the entry of a final judgment." (citations omitted). It was subject to revision by the trial court at any time before the entry of a final judgment.

Moreover, the face of Plaintiffs' complaint, including the amendment, fails to clearly establish that, as a result of Defendants' alleged negligence, Plaintiffs were "forced to take some action or otherwise suffer[ed] some actual inconvenience, such as incurring an expense." *Kohl*, 977 S.W.2d at 532 (citations and internal quotation marks omitted). The complaint, as amended, alleges that, in May 2013, Defendants prepared

- 22 -

and filed a motion to alter or amend the trial court's order granting summary judgment. However, there is no allegation that Defendants billed Plaintiffs for the preparation or filing of that motion. Nor did Defendants assert this as a basis for a finding of an actual injury or offer such evidence in support of their motion to dismiss. As the parties invoking the statute of limitations, it was Defendants' responsibility to proffer the additional information necessary to establish the defense. *See Redwing*, 363 S.W.3d at 455-56 ("The [defendant] chose a Tenn. R. Civ. P. 12.02(6) motion as its vehicle for seeking dismissal of [plaintiff's] complaint based on the statute of limitations. A [Rule] 12.02(6) motion tests only the legal sufficiency of the plaintiff's complaint, not the strength of the plaintiff's proof. Thus, courts ruling on a [Rule] 12.02(6) motion must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." (citations and internal quotation marks omitted)); *Givens*, 75 S.W.3d at 404 (noting that the defendant is not required "to submit evidence in support of his motion when the facts on which he relies to defeat plaintiff's claim are admitted by the plaintiff in his complaint" (citations and internal quotation marks omitted)). Here, Defendants failed to do so.

Thus, despite our decision to continue to adhere to the existing law with respect to the occurrence of an actual or legally cognizable injury and the accrual of a cause of action for legal malpractice, we conclude that the complaint in the case before us does not establish an actual injury prior to the date of the trial court's final judgment in the underlying case. Based on the facts alleged on the face of the complaint alone, the cause of action did not accrue prior to November 13, 2013, and Defendants' motion to dismiss should have been denied.

In addition, according to Plaintiffs, the facts in the complaint do not clearly establish that Plaintiffs had actual or constructive knowledge that Defendants' malpractice was the cause of their supposed injury—the May 7, 2013 dismissal of two underlying defendants. However, we have already determined that the motion to dismiss should have been denied because the complaint fails to establish an actual injury prior to the date of the final judgment in the underlying proceedings. As such, we conclude that this issue is pretermitted.

### 2. Circuit Court's Grant of Summary Judgment

Finally, Plaintiffs argue that summary judgment was not appropriate on their claim concerning the November 2013 voluntary dismissal. According to Plaintiffs, the circuit court erroneously concluded that their argument consisted of newly asserted claims not previously pleaded and that the claim concerning Defendants' alleged negligence in connection with the voluntary dismissal was also time-barred. Plaintiffs urge this Court to find that the Defendants' actions rendering the interlocutory order final amounted to a

separate and discrete act of malpractice such that the statute of limitations for that claim did not begin to run until the action was taken.

We agree that the circuit court erroneously concluded that Plaintiffs had failed to include in their complaint a separate claim for negligence arising out of Defendants' decision to enter a voluntary dismissal in November 2013. In paragraph 7 of Plaintiffs' complaint, they clearly allege that, as a result of Defendants' negligent advice, Plaintiffs were "permanently precluded . . . from maintaining their claims against the only viable defendant . . . , the individual defendant, [Mr.] Thompson." Then, in response to the motion for summary judgment, Plaintiffs offered evidence that, specifically, Defendants had misrepresented that the case could be re-filed against all of the underlying defendants, including Mr. Thompson and First Bank of Oneida.

Unlike the circuit court, we do not perceive this as a newly asserted claim. The Plaintiffs' complaint contained, at a minimum, three separate claims for legal malpractice against Defendants: (1) that Defendants negligently advised Plaintiffs to pursue weak claims against the defendant banks in the underlying lender liability suit; (2) that Defendants negligently allowed the individual underlying defendant, Mr. Thompson, to be dismissed; and (3) that Defendants negligently advised Plaintiffs to voluntarily dismiss their claims against the remaining underlying defendant in the lender liability suit. The third claim, Plaintiffs alleged, resulted in the *permanent preclusion* of their claims against "the only viable defendant," which we can only assume refers to the loss of their claim against Mr. Thompson.

Thus, we also agree that Plaintiffs' claims regarding the Defendants' alleged negligence in voluntarily dismissing the underlying case in November 2013 was a discrete claim of alleged malpractice, separate from the claims relating to the interlocutory summary judgment. The circuit court, therefore, erred in granting Defendants' motion for summary judgment on that remaining claim.

## IV. CONCLUSION

Based on the foregoing, we conclude that our formulation of the discovery rule articulated in *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995), and again in *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528 (Tenn. 1998), remains the appropriate analysis for determining when a claim of legal malpractice accrues. Accordingly, we decline to adopt the two tolling doctrines proposed by Plaintiffs—the continuing representation rule and the appeal-tolling doctrine—and also decline to hold that a final judgment is required before there is an actual injury for purposes of accrual. Even so, the complaint in the present case fails to establish an actual injury prior to the date of the trial court's final judgment in the underlying case. Consequently, the trial court erred in

- 24 -

granting the motion to dismiss and in determining that the plaintiffs' legal malpractice claims were time barred. We further conclude that the trial court also erred in granting Defendants' motion for summary judgment.

We, therefore, reverse the judgments of the trial court and the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed to Appellees Nicholas D. Bunstine, Brent R. Watson, and Jerrold L. Becker, and their surety, for which execution may issue if necessary.

_____
ROGER A. PAGE, JUSTICE