IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 11, 2018 Session

## DENT ROAD GENERAL PARTNERSHIP ET AL. v. SYNOVUS BANK ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-12-1403     Jim Kyle, Chancellor**

_____

### No. W2017-01550-COA-R3-CV

_____

Appellants appeal the grant of summary judgment to defendants title company and legal professionals on claims related to a real estate transaction that occurred in 2004. We affirm the grant of summary judgment as to Appellants' legal malpractice claim based upon the expiration of the statute of limitations. Based upon agreement of the parties, we also affirm the dismissal of Counts I through VII against the title company. The grant of summary judgment in favor of the title company as to all remaining claims is vacated.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part, and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and BRANDON O. GIBSON, JJ., joined.

Randall N. Songstad, Cordova, Tennessee, for the appellants, Dent Road General Partnership, and Tab Watters.

Mark J. Grai, Memphis, Tennessee, for the appellee, Chicago Title Insurance Company.

Richard Glassman and Jonathan Stokes, Memphis, Tennessee, for the appellees, Jason Scott Wexler, and Hanover, Walsh, Jalenak & Blair, PLLC.

### OPINION

#### Background

This case centers around a real estate transaction in Shelby County, Tennessee. The property at issue consists of three tracts: the House Parcel, the Barn Parcel, and the

Access Tract (together, "the Dent Road property" or "the subject property"). The House Parcel and the Barn Parcel were acquired by Defendant Trust One Bank ("Trust One") by virtue of a foreclosure. Trust One thereafter appointed Defendant Leonard C. Dunavant as Substitute Trustee ("Substitute Trustee") to conduct the foreclosure sale. On February 17, 2004, Trust One, Substitute Trustee, and the purported owner of the Access Tract, Grace W. Swaney, entered into an "Escrow Agreement" whereby Trust One acquired the rights to the Access Tract. This tract was necessary to maximize the value of the foreclosed property as the House Parcel did not have access to a road. The purchase price of $52,380.00 was placed in escrow, and Trust One received title to the Access Tract via quitclaim deed from Ms. Swaney. The Escrow Agreement expressly stated that the Access Tract was subject to pending lawsuits contesting Ms. Swaney's ownership interest in the Access Tract.

Plaintiffs/Appellants Joseph Higdon, Tab Watters, Robert L. Knight, and Michael R. Mayer formed Dent Road General Partnership ("Dent Road" and collectively, "Appellants") for the purpose of acquiring the Dent Road Property. Appellants purchased the subject property at a foreclosure sale on February 18, 2004. The contract specifically stated that title was to be conveyed by warranty deed and gave Appellants a reasonable amount of time to clear up any title defects. Dent Road retained Defendant/Appellee Jason Wexler ("Attorney Wexler") of Defendant/Appellee Hanover, Walsh, Jalenak & Blair, PLLC ("Hanover Walsh," and together with Attorney Wexler, "Appellees") to represent the Appellants in acquiring the subject property. Appellants and Appellees had previously worked together in forming the partnership. Appellees engaged Defendant/Appellee Chicago Title Insurance Company to provide title insurance for the subject property. There is no dispute that Dent Road knew they were purchasing title insurance at the time of the closing.

On March 23, 2004, Attorney Wexler emailed the substitute trustee concerning some "issues [that had] arisen" with the closing. In particular the email noted that Ms. Swaney and another purported owner, Randall P. Swaney, were "quitclaiming their interests" in the Access Tract and that other minor title issues not at issue in this appeal needed to be corrected. The email concludes that "[a]ssuming that we can get all of this foregoing worked out in time," the closing would take place as scheduled. It appears that Mr. Watters was included in this email and that he forwarded the email to Mr. Mayer and Mr. Knight. On March 28, 2004, Attorney Wexler emailed Mr. Watters to inform Dent Road that there were "a series of minor errors" with regard to ensuring good title to the subject property. Attorney Wexler asked if the partners wanted the "gory details" of the issues; otherwise, Attorney Wexler stated that he would let Dent Road know "either (a) when the title company has cleared us, or (b) when we hit a road block." Attorney Wexler and Mr. Watters undisputedly met on March 29, 2004, to go over the closing. Appellants, by and through Mr. Watters, closed on the subject property on March 31,

2004. There is no dispute that at the closing Dent Road received a quitclaim deed concerning the Access Tract rather than a warranty deed as specified in the contract.[1] Despite the fact that only a quitclaim deed was conveyed concerning a portion of the subject property, Dent Road paid the full sales price contemplated by the contract.

Appellants remained in possession of the subject property until 2011, when they sought to sell the subject property. The Barn Parcel sold in March 2011 for $300,000.00, with Dent Road retaining a small portion of the Barn Parcel for access purposes. Later in 2011, a prospective buyer approached Dent Road about purchasing the House Parcel, the Access Tract, and the small remaining portion of the Barn Parcel. The buyer also wished to purchase a small triangular tract from Ms. Swaney and Mr. Swaney. Dent Road was willing to obtain this tract to consummate the purchase. Dent Road thereafter hired a title company to perform a title search related to the triangular tract, which search revealed title issues. On September 7, 2011, the title company informed Dent Road that these title issues likely also affected the Access Tract. Specifically, the search revealed four pending lawsuits seeking to set aside a fraudulent conveyance of the Access Tract by Ms. Swaney and Mr. Swaney, several judgment liens, and liens lis pendens. When the Appellants asked Chicago Title to reinsure the new purchaser, Chicago Title refused.[2]

On September 6, 2012, Appellants filed an action against Trust One, Substitute Trustee, Attorney Wexler, Hanover Walsh, and Chicago Title,[3] seeking a declaratory judgment, money damages, and rescission of the 2004 closing. Appellants alleged that, among other things, Appellees failed to disclose title defects regarding the Dent Road property and conspired to deliver Appellants inferior title to the subject property. Additionally, Appellants alleged that Chicago Title failed to act in a diligent and reasonable manner to correct the alleged title defects affecting the subject properties. An amended complaint was filed on November 6, 2012.

Appellees moved for summary judgment for the first time on March 3, 2015, arguing that Appellants' claims were barred by the one-year legal malpractice statute of limitations. In support, Appellees filed the affidavit of Attorney Wexler, who testified that the title issues were disclosed to Mr. Watters prior to the closing. In addition, both Attorney Wexler and his staff testified that all closing documents, including the Access Tract quitclaim deed, were mailed to Dent Road. The defendant bank and Chicago Title also filed motions for summary judgment. Appellants filed a response in opposition to Appellees' motion, supported by the affidavit of Mr. Watters, who testified that he was unaware of the title issues prior to 2011. The trial court entered an order denying the

---

[1] The other two tracts were conveyed by Substitute Trustee's Deed.

[2] It is undisputed that Chicago Title eventually resolved the title defects.

[3] The record also reveals that other defendants were dismissed by consent order granting summary judgment. The consent order is not included in the record but is referenced in a statement of undisputed material facts.

motions on December 2, 2016, concluding that disputes of material fact made summary judgment inappropriate.

The parties conducted additional discovery, including the deposition of Mr. Watters. In his deposition, Mr. Watters denied that he ever personally received the closing documents following the closing but (1) admitted that he could not definitively state that the documents were not received by Dent Road; (2) indicated they he saw the quitclaim deed so long as it was part and parcel of the closing documents; (3) stated that he made no effort to investigate the closing documents after allegedly not receiving them; and (4) could not recall the March 29, 2004 meeting with Attorney Wexler. Appellees filed a renewed motion for summary judgment on May 9, 2017, again arguing that Appellants' injury arose at the time of closing, March 31, 2004, and that the Appellants' claims were time-barred. After receiving supplemental briefing on the discovery rule, discussed *infra*, the trial court entered an order granting the renewed motion for summary judgment on July 7, 2017. Adopting the argument of Appellees, the trial court determined the injury for purposes of the discovery rule occurred on the date of closing, March 31, 2004, and that Appellants were alerted to the injury when they received the quitclaim deed at the closing. The trial court certified its judgment as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. Appellants filed a timely notice of appeal August 3, 2017.[4]

## Issues Presented

Appellants raise three issues, which are taken from their appellate brief:

1. Whether the trial court erred by improperly applying the "discovery rule" in a legal malpractice setting when it found the Appellant suffered an injury at the real estate closing in 2004 instead of when Appellant was unable to sell the real property in 2011.
2. Whether the trial court erred in applying the "knowledge" element of the discovery rule when it found the Appellant should have known at closing that it received real property with significant title defects.

---

[4] Following the filing of the notice of appeal, the parties engaged in a dispute concerning the record. Eventually, the trial court adopted Appellees' designation of the record. Although Appellants asked this Court to intervene, they failed to comply with our rules regarding motion practice and never filed a fully compliant motion. As noted throughout this opinion, the record on appeal omits several documents that would have been useful for a full adjudication of this appeal. Indeed, despite the fact that this case involves the statute of limitations, making the date the initial complaint is filed highly relevant, this initial complaint is not included on appeal. The parties do not dispute, however, that the complaint was filed on September 6, 2011. While we often commend parties on their efforts to limit the record to only relevant documents, the highly truncated record in this case creates difficulty in adjudicating this appeal.

3. Whether the trial court erred in dismissing all of the Appellants' claims against Chicago Title based on the statute of limitations for legal malpractice and when a motion as to all claims was not before the court.

**Standard of Review**

This case was decided on a motion for summary judgment. Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion; and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. "[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015).

On appeal, this Court reviews a trial court's grant of summary judgment de novo with no presumption of correctness. *Rye*, 477 S.W.3d at 250 (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). When a moving party has filed a properly supported motion for summary judgment, the nonmoving party must respond by pointing to evidence that shows summary judgment is inappropriate. *Rye*, 477 S.W.3d at 264–65.

**Analysis**

**I.**

We begin with the question of whether the trial court correctly granted summary judgment to Appellees on all claims related to legal malpractice based on the expiration of the statute of limitations. Pursuant to Tennessee Code Annotated section 28-3-104(c)(1), claims of legal malpractice "shall be commenced within one (1) year after the cause of action accrued." In order to determine when the action accrues—that is, when the statute of limitations begins to run—we apply the discovery rule. *Story v. Bunstine*, 538 S.W.3d 455, 463 (Tenn. 2017). As the Tennessee Supreme Court recently explained:

Under this rule, a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant.

In legal malpractice cases, the discovery rule is composed of two distinct elements: (1) the plaintiff must suffer legally cognizable damage—an actual injury—as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct.

*Story*, 538 S.W.3d 463–64 (quoting *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998) (internal citations and quotation marks omitted)). Thus, the discovery rule in this situation requires both an actual injury and knowledge that the injury was caused by the defendant for a cause of action to accrue for purposes of the statute of limitations. *Id.* at 464 (citing *Carvell v. Bottoms*, 900 S.W.2d 23, 30 (Tenn. 1995)).

## A.

Appellant argues that neither element is present in this case. As such, we begin with the question of when Appellants suffered a legally cognizable injury. In order for a cause of action to accrue and the statute of limitations to begin to run, the plaintiff must suffer an actual injury, also known as a "legally cognizable injury." *Id.* at 464. According to our supreme court:

An actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of a liability. An actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer "some actual inconvenience," such as incurring an expense, as a result of the defendant's negligent or wrongful act. However, the injury element is not met if it is contingent upon a third party's actions or amounts to a mere possibility.

*Id.* at 464 (quoting *Kohl*, 977 S.W.2d at 532). Thus, an alleged injury will not constitute an actual injury where it is "speculative, uncertain, and contingent on a third party attack." Importantly, however, the Tennessee Supreme Court recently reaffirmed the principle that the injury need not be irremediable. *Id.* at 465 (citing *Carvell*, 900 S.W.2d at 30). As such, it is "not necessary for [the plaintiff] to have suffered all the injurious effects or consequences of the alleged negligence in order for the statute to begin running." *Cardiac Anesthesia Servs., PLLC v. Jones*, 385 S.W.3d 530, 543 (Tenn. Ct. App. 2012) (quoting *Honeycutt v. Wilkes, McCullough & Wagner*, No. W2007-00185-COA-R3-CV, 2007 WL 2200285, at *7 (Tenn. Ct. App. Aug. 2, 2007)).

6

Here, the parties dispute when the injury occurred for purposes of the statute of limitations. According to Appellees, the injury occurred at the time of the closing, when Appellants received less than marketable title. According to Appellants, however, no actual injury occurred until Appellants were unable to sell the subject property in 2011. Each party cites considerable caselaw to support their respective positions.

Appellants first cite *Tennessee WSMP, Inc. v. Capps*, No. 03A01-9407-CV-00241, 1995 WL 83579 (Tenn. Ct. App. Mar. 2, 1995), a case again involving a real estate transaction. In *Capps*, the plaintiff retained the defendant attorney to provide a title opinion as to property that the plaintiff intended to purchase. *Id.* at *1. In 1986, the plaintiff purchased the property and title insurance upon the assurance that the title was free and clear of all encumbrances. Alas, the property was encumbered by a deed of trust and amendment. Around November 1990, the plaintiff attempted to sell the property; the sale did not take place due to the undisclosed encumbrance. *Id.* at *1–*2. A suit between the plaintiff property owner and the buyer terminated favorably to the buyer in May 1993. *Id.* at *2. A malpractice action was thereafter filed in December 1993. *Id.* The plaintiff asserted that no actual injury occurred until the adverse decision in the court case involving the buyer. The trial court disagreed and granted summary judgment. *Id.*

The Court of Appeals reversed. First, the court noted that the appropriate standard for determining an injury is "the date on which the negligence became irremediable." *Id.* at *3 (*Ameraccount Club, Inc. v. Hill*, 617 S.W.2d 876, 879 (Tenn. 1981)). Under this standard, the court concluded that the plaintiff's injury did not become irremediable until November 1990, when the plaintiff learned that there was a cloud on its title. *Id.* at *4. In reaching this result, the court rejected the plaintiff's contention that the injury did not become irremediable until the termination of the buyer-seller court case in the buyer's favor, as well as plaintiff's argument that in 1990, the plaintiff still hoped to salvage the sale of the property. *Id.* Instead, the court concluded the date the cause of action accrued, that is "injury to some extent was suffered and known[,]" the date that the plaintiff learned of the cloud on its title—"a cloud that casts an ominous shadow over the plaintiff's plan to close the sale of the subject property[.]" *Id.* Because the legal malpractice action was filed more than one year from this date, the court concluded that it was barred by the applicable statute of limitations.

The next case cited by Appellants, *Carvell v. Bottoms*, is also a legal malpractice case involving a real estate transaction. 900 S.W.2d at 24. In this case, however, the Tennessee Supreme Court expressly rejected the irremediable standard applied in *Capps*. In *Carvell*, the plaintiffs owned property that was subject to a gas pipeline easement. *Id.* at 24–25. Following an agreement by a third party to purchase the property, the plaintiffs retained an attorney to perform the title work and closing. *Id.* The attorney's initial title opinion noted the easement, but the warranty deed prepared by the attorney did not. *Id.* The deed thereafter executed at the closing in December 1981 did not mention the

easement. The utility later moved the pipeline closer to the home, and the third party sued the plaintiffs. *Id.* The plaintiffs hired independent counsel and judgment was eventually entered against them for breach of warranty in January 1989. *Id.* After the judgment, the plaintiffs asked their former attorney's law firm to assume responsibility for the judgment. The law firm refused, and the plaintiffs filed suit for legal malpractice in May 1990. *Id.*

The defendant law firm moved for summary judgment based upon the expiration of the one-year statute of limitations. *Id.* The trial court granted the motion, but this Court vacated the trial court's judgment. *Id.* The Tennessee Supreme Court thereafter reinstated the decision of the trial court that the statute of limitations had expired. *Id.* at 30. Specifically, the court concluded that the date the legal malpractice action accrued was when they were sued for the wrongfully prepared deed, regardless of the fact that multiple attorneys had advised plaintiffs that the suit for breach of warranty lacked merit. In reaching this result, the court expressly rejected the notion that an injury does not become legally cognizable until it is irremediable. *Id.* at 29–30 ("We can no longer even approve of the usage of the adjective 'irremediable' in this context: this term, which was first used in pure dicta by the *Ameraccount* court, has caused confusion from its inception and serves no useful purpose.").

In *Wilson v. Pickets*, 196 S.W.3d 138 (Tenn. Ct. App. 2005), the plaintiffs filed a legal malpractice suit against their former attorney after it was discovered that the attorney had allowed the plaintiffs to illegally subdivide their property. *Id.* at 140. The plaintiffs alleged that the injury occurred and was discovered years later when a subsequent owner of the property was denied building permits based upon the illegal subdivision. *Id.* The trial court entered judgment in favor of the plaintiffs. *Id.* at 141.

On appeal, the attorney argued that the statute of limitations began to run on the date that the subdivision occurred, as the plaintiffs should have known at that time the applicable laws regarding subdivision. *Id.* at 143. The plaintiffs contended, however, that they were not aware of a problem with the subdivision until notified by counsel following the denial of the building permits. *Id.* The Court of Appeals ruled that the attorney's argument "goes to causation rather than discovery." The Court stated, however, that the plaintiffs "suffered no injury until April 14, 1998[,]" i.e., the date they were informed of the illegality of the prior subdivision of the property. *Id.* The court went on to conclude, however, that the plaintiffs were more than 50% at fault for the injury because one of the plaintiffs was aware of the subdivision rules that rendered the subdivision of the property illegal for building purposes. *Id.* at 144.

Finally, in *Honeycutt v. Wilkes, McCullough & Wagner*, No. W2007-00185-COA-R3-CV, 2007 WL 2200285 (Tenn. Ct. App. Aug. 2, 2007) *perm. app. denied* (Tenn. Dec. 26, 2007), the plaintiff sued her original divorce attorney following the termination of her alimony payments due to cohabitation. *Id.* at \*2. The plaintiff alleged

8

that her divorce attorney breached the standard of care in (1) advising the plaintiff that Tennessee law required that in every agreed martial dissolution agreement, alimony must be terminable upon cohabitation; (2) in informing her that she would not trigger the cohabitation provision of the parties' alimony award so long as she continued to own a separate home, resulting in the termination of the alimony award; and (3) failing to be diligent in the post-divorce proceeding seeking to terminate the alimony award. The attorney argued, *inter alia*, that the claim was barred by the one-year statute of limitations. *Id.* at *3. The trial court agreed and held that the statute of limitations began to run when wife terminated her relationship with the divorce attorney. *Id.* This court affirmed but chose a different date for the accrual of the plaintiff's cause of action. *Id.* at *6–*7. In particular, we held that the plaintiff's injury occurred when she was forced to defend against her former husband's petition to terminate the alimony obligation. *Id.* at *7.

Appellants contend that the above cases show that the injury at issue here did not occur at the closing but in 2011, when Appellants were unable to sell the Dent Road property and were required to expend resources and effort to correct the title deficiencies. Appellees, of course, disagree, and argue that these cases are either distinguishable from the present facts or support their argument. In addition, Appellees contend that the facts of this case more closely align with the facts in *Citicorp Mortg., Inc. v. Roberts*, No. 02S019712CH00109, 1998 WL 690839 (Tenn. Oct. 5, 1998).[5] In *Citicorp*, a property owner sought the services of the plaintiff financial institution to refinance the debt on his property. *Id.* at *1. The plaintiff hired the defendant attorney to handle the closing. At that time, the property had three existing liens. *Id.* Plaintiff financial institution instructed the attorney to obtain a release of one of the liens; the attorney did not obtain the release, and when the closing occurred in January 1990, the lien remained on the property, superior to the plaintiff's lien. *Id.* The superior lien holder later foreclosed on the property, to the plaintiff's detriment. As such, the plaintiff filed a legal malpractice suit in August 1992 against the defendant closing attorney, contending that the attorney breached the standard of care when he failed to ensure that the lien was released. *Id.* The trial court eventually granted summary judgment to the defendant attorney based upon the expiration of the statute of limitations. *Id.*

The Court of Appeals reversed, holding that no actual injury occurred until the foreclosure of the property, which "wip[ed] out" the plaintiff's lien. *Id.* at *2 (quoting *Citicorp Mortg., Inc. v. Roberts*, No. 02A01-9608-CH-00196, 1997 WL 275587, at *6 (Tenn. Ct. App. May 27, 1997)). In reaching this result, the Court of Appeals noted that

---

[5] *CitiCorp* is an unpublished opinion from the Tennessee Supreme Court. *Id.* at *1 ("THIS OPINION IS DESIGNATED AS NOT FOR PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY TENN. S.CT. RULE 4."). Although it is citable, not having been designated "Not for Citation[,]" it is only of persuasive value in this case. *See generally* Tenn. R. Sup. Ct. 4.

had the property owner paid the indebtedness on the superior lien, no injury would have been sustained by the plaintiff financial institution. *Id.* Because the case was filed within one year of the foreclosure, the court concluded that the action was not barred by the one-year statute of limitations. *Id.*

The Tennessee Supreme Court reversed the decision of the Court of Appeals and reinstated the decision of the trial court. Specifically, the court held that the plaintiff financial institution suffered an actual injury at the time of the closing:

> [W]e are persuaded that an actual injury was sustained by the plaintiff at the time of the closing on January 10, 1990. It was on that date that the plaintiff lost its legal position with regard to the security interest which was to be used to secure the loan. In other words, the plaintiff's lien was rendered subordinate to [the superior lienholder's] interest in the property as of the date of closing. Also, the plaintiff's loan was worth less as of the day of closing due to its junior position. Accordingly, we find that the actual injury occurred when [the superior lienholder's] senior position was established at the closing on January 10, 1990.

*Id.* at *4. The legal malpractice complaint, filed more than year following this date, was therefore untimely. *Id.*

Considering all of the cases cited by the parties, we are likewise persuaded that the injury in this case occurred at the closing on March 31, 2004. As previously discussed, the Tennessee Supreme Court has recognized that an actual injury can occur when the plaintiff is forced to take action or suffers an actual inconvenience **or** when the plaintiff loses a legal right or interest. *See **Story***, 538 S.W.3d 464 (quoting ***Kohl***, 977 S.W.2d at 532). Appellant's focus on the fact that they were not required to expend effort to correct the deficiency in the title until 2011 is therefore not dispositive of the question of when a legally cognizable injury occurred in this particular case. Thus, the decision in ***Honeycutt*** is largely inapposite to the analysis in this case. *See **Honeycutt***, 2007 WL 2200285, at *5–*7 (involving the question of when the plaintiff suffered some actual inconvenience from the attorney's alleged malpractice).

Appellants contend, however, that the facts in ***Wilson*** and ***Carvell*** are more closely aligned with the situation presented in this case. *See generally **Wilson***, 196 S.W.3d at 140. As an initial matter, the court in ***Wilson*** expended little effort discussing the date of injury, framing the argument of the parties as one of causation rather than accrual. *Id.* at 143 ("[Defendant's] argument, as we perceive it, goes to causation rather than discovery."). Moreover, the situation in ***Wilson*** is not identical, as the buyer and seller roles are reversed from this case. In ***Wilson***, the plaintiff in the legal malpractice suit was the seller of property who was later sued for transferring property with a cloud on the title. The seller, no longer having any interest in the property, therefore suffers no injury until forced to defend against a later action involving the cloud. Any alleged injury

10

that took place at the closing was therefore contingent on the actions of a third party. *See Story*, 538 S.W.3d at 465 (holding that a legally cognizable injury does not occur if the injury is speculative or contingent on the actions of a third party). The same situation was present in *Carvell*, where again the plaintiff in the legal malpractice action was the seller of the property in the underlying real estate transaction. *See Carvell*, 900 S.W.2d at 24–25.

Here, Appellants were the purchasers, rather than the sellers of the subject property, during the 2004 transaction. At this time, despite the express requirement that the purchase of the Dent Road property be accomplished by warranty deed, Appellants received only a quitclaim deed to the Access Tract, a necessary component of the Dent Road property for use of the House Parcel. Moreover, there is no dispute in this case that at the time of the closing, the quitclaim deed conveyed less than marketable title to Appellants. *See Black's Law Dictionary* 1623 (9th ed. 2009) (defining "unmarketable title" as "[a] title that a reasonable buyer would refuse to accept because of possible conflicting interests in or litigation over the property). Indeed, in their response to Appellees' statement of undisputed facts, Appellants admitted that "title was not marketable on that day," i.e., the date of the closing. The injury to them was not the inconvenience of defending against a later suit by the buyer but in actually receiving property via quitclaim deed with a cloud on its title, despite the expectation that the title would be conveyed via warranty deed and be marketable. Indeed, the amended complaint in this case bears out this interpretation. *See* Tenn. R. Civ. P. 56.04 (stating that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and **admissions on file**, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law") (emphasis added); *see also **Pankow v. Mitchell***, 737 S.W.2d 293, 296 (Tenn. Ct. App. 1987) ("[F]actual statements contained in pleadings filed on behalf of a party may be considered as admissions."). For example, the amended complaint states that "[a]t the time of the closing, the title being conveyed by the Substitute Trustee's Deed was not good and merchantable[.]" Appellants admit in the amended complaint that such a situation created a concern that there was a cloud on the title of the subject property.[6] Moreover, the damages sought do not involve the expense required to defend any particular action against a third party but to rescind the original real estate transaction due to unmarketable title. The damage to Appellants therefore occurred at the closing, rather than when the plaintiffs were unable to sell the Dent Road property due to the title defect.

Thus, the situation in this case most closely aligns with the facts in *CitiCorp*. *See generally **Citicorp***, 1998 WL 690839, at \*1–\*4. There, like here, the plaintiff in the legal

---

[6] Appellants contended that the sellers had superior title but admitted that such determination would be required to be determined with a quiet title action.

malpractice action is the purchaser of the property. Likewise, in both cases, the plaintiff purchased property with the expectation that the title would be marketable. At the closing, however, both parties received encumbered property. As of the date of the closing, the plaintiff's interests in the properties were therefore impaired. *See id.* at *4 (holding that an actual injury occurred when the plaintiff's interest in the property was subordinated). This "loss of a legal right, remedy or interest" is sufficient to establish a legally cognizable injury as of the date of the closing. *Story*, 538 S.W.3d 464 (quoting *Kohl*, 977 S.W.2d at 532). Indeed, even though the *Capps* court utilized a now-defunct standard, the court came to a similar conclusion regarding what constitutes a legally cognizable injury. *Capps*, 1995 WL 83579, at *4. In particular, the court made clear that the injury that occurred was the cloud on the purchaser's title to the property, rather than expense or effort associated with remedying the impairment. *Id.*[7] Thus, the trial court did not err in concluding that Appellants suffered an actual injury as of the closing date, March 31, 2004.

**B.**

Appellants next contend that regardless of when the injury occurred, they did not have actual or constructive notice of the injury until September 2011. Again, in order for a cause of action to accrue and the statute of limitations to run, the plaintiff must have both suffered an injury and had notice of the injury. *Story*, 538 S.W.3d at 464 (quoting *Kohl*, 977 S.W.2d at 532). As explained by the Tennessee Supreme Court:

> The knowledge component of the discovery rule may be established by evidence of actual or constructive knowledge of the injury. Accordingly, the statute of limitations begins to run when the plaintiff has actual knowledge of the injury as where, for example, the defendant admits to having committed malpractice or the plaintiff is informed by another attorney of the malpractice. Under the theory of constructive knowledge, however, the statute may begin to run at an earlier date—whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct. We have stressed, however, that there is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard. Rather, the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an

---

[7] We concede that the *Capps* court did not hold that the injury occurred on the date of the closing. This conclusion appears to result from two considerations: (1) the court appeared to analyze both the injury and the knowledge of the injury simultaneously; and (2) the court applied the "irremediable injury" standard that is no longer good law.

injury as a result of wrongful conduct. It is knowledge of facts sufficient to put a plaintiff on notice that an injury has been sustained which is crucial. A plaintiff may not, of course, delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff. Allowing suit to be filed once all the injurious effects and consequences are known would defeat the rationale for the existence of statutes of limitations, which is to avoid the uncertainties and burdens inherent in pursuing and defending stale claims.

*Id.* (quoting **Kohl**, 977 S.W.2d at 532–33 (citations omitted)).

Appellants contend that they only received knowledge of the title defects regarding the subject property in September 2011 when they were informed by another closing attorney that they could not sell their property. The trial court disagreed, ruling that

In [his] deposition testimony, Mr. Watters stated that he couldn't remember receiving the closing documents after the closing, that even if he had received such, he wouldn't have read the documents, and, if he had read such, he would have seen that it was a quitclaim deed instead of a warranty deed, a fact not presented to him until several years later when he tried to sell the property.

Thus, the knowledge prong of the discovery rule is satisfied as of the date of closing on March 31, 2004.

According to Appellants, however, this ruling was properly decided only by a jury.

As an initial matter, Appellants appear to argue that Mr. Watters's testimony that he had no actual knowledge of the title defects is sufficient to prevent summary judgment on this issue. According to Appellants, "[t]he fact that [Mr. Watters] has denied any knowledge of the defect creates, in and of itself, a fact issue for a jury to determine." Appellants cite no law to support this assertion, which is unsurprising, as it is not an accurate statement of Tennessee law. As previously discussed, the knowledge element of the discovery rule is satisfied by evidence of either actual or constructive notice of the injury. *Id.* (quoting **Kohl**, 977 S.W.2d at 532). Moreover, Tennessee courts have often concluded that a plaintiff had constructive notice of an injury at the summary judgment stage of litigation. *See, e.g., **Cardiac Anesthesia Servs., PLLC v. Jones**, 385 S.W.3d 530, 546 (Tenn. Ct. App. 2012) (affirming summary judgment on the basis that that the client had constructive notice of an injury); **Lufkin v. Conner**, 338 S.W.3d 499, 505 (Tenn. Ct. App. 2010) (affirming summary judgment on the basis of constructive notice). Instead, summary judgment may be granted in this situation "'where the undisputed facts demonstrate that no reasonable trier of fact could conclude that a plaintiff did not know, or in the exercise of reasonable care and diligence should not have known, that he or she

was injured as a result of . . . [that] conduct.'" ***Smith v. Hauck***, 469 S.W.3d 564, 572 (Tenn. Ct. App. 2015) (quoting ***Young ex rel. Young v. Kennedy***, 429 S.W.3d 536, 557 (Tenn. Ct. App. 2013)). In the health care liability context, the Tennessee Supreme Court has opined that "'where the resolution of the issue depends upon the question of whether due diligence was exercised under the circumstances, and where differing inferences might reasonably be drawn from the uncontroverted facts, the issue is not appropriate for summary judgment.'" ***Sherrill v. Souder***, 325 S.W.3d 584, 597 (Tenn. 2010) (quoting ***Hathaway v. Middle Tenn. Anesthesiology, P.C.***, 724 S.W.2d 355, 360 (Tenn. Ct. App. 1986)). Still, this rule does not mean "'that summary judgment is never available when the question of good faith or reasonableness is a determinative issue.'" ***Raleigh Commons, Inc. v. SWH, LLC***, No. W2011-01298-COA-R3-CV, 2013 WL 3329016, at *15 (Tenn. Ct. App. June 28, 2013) (quoting ***Gulf Ins. Co. v. Construx, Inc.***, No. M1999-02803-COA-R3-CV, 2001 WL 840240, at *19 (Tenn. Ct. App. July 26, 2001)).

In support of their argument, Appellants cite ***National Mortgage Co. v. Washington,*** 744 S.W.2d 574 (Tenn. Ct. App. 1987), a legal malpractice action involving a bankruptcy. In ***Washington***, the plaintiff mortgage company held a deed of trust securing a loan. ***Id.*** at 574. The deed of trust was guaranteed by the Veterans Administration ("VA") pursuant to its rules and regulations. ***Id.*** The debtor later filed a petition for bankruptcy. The plaintiff hired the defendant attorney; in 1983, the attorney entered into a consent order on plaintiff's behalf in the bankruptcy proceeding. The consent order allowed plaintiff to foreclose on the deed of trust, but had the effect of waiving plaintiff's ability to seek a deficiency and violated certain VA regulations. According to the plaintiff, they only learned of the waiver of deficiency after they attempted to seek payment of the deficiency years later. ***Id.*** at 576. In contrast, the defendant attorney asserted that the plaintiff was on notice of the waiver at the time the consent order was delivered to the plaintiff, as the consent order clearly stated that the mortgage company "shall make no claim against the Debtors herein for any deficiency or costs relating to the mortgage loan against said property." ***Id.*** at 576. The trial court granted summary judgment, ruling that the action was barred by the applicable statute of limitations. ***Id.*** at 575.

The Court of Appeals reversed. ***Id.*** at 581. With regard to the knowledge element of the discovery rule, the court held that the undisputed facts did not entitle the defendant attorney to summary judgment because the inferences to be drawn from the facts were in dispute, in particular whether notice of the agreed order alone was sufficient to put a reasonable person on notice that the plaintiff would be unable to seek repayment from the VA. ***Id.*** at 580. According to the court, "[w]hether the plaintiff's employee should have known the legal effect of the order calls for a determination of the reasonableness of the employee's conduct. Whether any kind of behavior conforms to a legal standard of reasonable conduct is a mere fact question for the jury, and not a question of law." ***Id.*** at 580. Applying this standard to the facts at issue, the court concluded that summary judgment was not appropriate on the issue of the plaintiff's reasonable belief,

14

summarizing that "[i]f the lawyer charged with the duty to protect plaintiff's debt was unaware of the ramifications of this order, is it reasonable to charge the layman relying on the attorney with such knowledge? We think not." *Id.* Importantly, in reaching this result, the court noted that "[t]he record does not reflect that defendants at any time conferred with plaintiff about the agreed order, and certainly they do not contend that plaintiff consented to the action taken." *Id.* at 579–80. Thus, we held that the grant of summary judgment on the issue of the statute of limitations was inappropriate. *Id.* at 581.

Appellants assert that the facts in this case are highly analogous to the case-at-bar and that summary judgment is likewise inappropriate. In particular, Appellants contend that if the delivery of the consent order which expressly provided that the mortgage company waived its right to seek a deficiency was not sufficient to put the plaintiff in *Washington* on notice of its claim, the fact that Dent Road was delivered a copy of the quitclaim deed in this case is likewise insufficient to show notice.[8] According to Appellants, whether the quitclaim deed alerted them to the injury, i.e., the fact that their title was unmarketable, as well as that this injury was "sustained as a result of the defendant's negligent or wrongful conduct," is a proper question for the jury. *Story*, 538 S.W.3d 463–64 (quoting *Kohl*, 977 S.W.2d at 532).

Although Appellees do not specifically address *Washington* in their appellate brief, Appellees do contend that Appellants here had the requisite knowledge to discern the lack of marketability from the quitclaim deed, citing Mr. Watters's deposition testimony. In particular, Appellees note that when questioned as to whether a review of the closing documents would have alerted Mr. Watters to "issues with the title," Mr. Watters replied that "At this point in my life, . . . yes. I understand that." Respectfully, we cannot conclude that this statement, made over a decade after the closing at issue, sufficiently shows that Mr. Watters understood the implications of the documents at the time of closing. Likewise, this statement does not support a conclusion that, as a matter of law, a person exercising due diligence would have been alerted to the title deficiencies at issue here solely based upon the quitclaim deed, particularly the outstanding lawsuits affecting title to the Access Tract. *See Sherrill*, 325 S.W.3d at 597. Moreover, while the quitclaim deed itself may have been sufficient to put Mr. Watters and therefore Appellants on notice that they had received less than they bargained for, in other words, that they received a quitclaim deed concerning the Access Tract while the purchase contract required a warranty deed, the notice required is not simply of the injury, but that the injury was caused by the defendant's negligence. *See Story*, 538 S.W.3d at 464

---

[8] Appellants do not agree that the quitclaim deed was ever delivered to Appellants. The trial court ruled, however, that the undisputed facts, as supported by the evidence presented, established that the documents were delivered to Dent Road. Moreover, the undisputed facts show that Mr. Watters was presented with the quitclaim deed during the closing. Because of our resolution of this issue, any purported dispute concerning the delivery of the documents is not material to the question of Appellants' knowledge for purposes of this appeal.

15

(quoting **Kohl**, 977 S.W.2d at 532) (noting that the knowledge must be sufficient to put the plaintiff on notice that he has "suffered an injury as a result of wrongful conduct" by the defendant).

We note, however, that the facts in this case are distinguishable from that of **Washington** on another basis. As previously discussed, in reaching the result in **Washington**, this court specifically noted that the record contained no evidence of discussions between the plaintiff and the defendant attorney concerning the agreed order. *See Washington,* 744 S.W.2d at 579–80. The same is not true in this case. Here, Attorney Wexler specifically testified in his affidavit to the following:

> 9. On March 29, 2004, I met with Tab Watters in person, and he and I discussed the details of the transaction at issue in this case, including:
>
>> a. The title issues surrounding the Access Tract;
>>
>> b. The pending lawsuits affecting title to the Access Tract;
>>
>> c. The judgment liens and liens lis pendens;
>>
>> d. The manner in which Chicago Title would issue title policies to insure over such title defects;
>>
>> e. All issues and details surrounding the Escrow Agreement and the $52,380 held in escrow by Evans & Petree;
>>
>> f. All issues and details surrounding the Quitclaim Deed;
>>
>> g. All issues and details surrounding the Substitute Trustee's Deed and Deeds of Trust;
>>
>> h. All issues and details surrounding the Dedication and Escrow Agreement;
>>
>> i. Any and all other details of the transaction relating to the House Parcel, Barn Parcel, and Access Tract;
>
> 10. After the March 29, 2004 meeting, there is no doubt that Mr. Watters understood all of the circumstances of the transaction at issue, and understood the Access Tract was subject to title issues.
>
> 11. Having been fully apprised of these circumstances, Mr. Watters, on behalf of Dent Road Partnership, still went through with closing on the House Parcel, Barn Parcel, and Access Tract, to fully consummate the transaction.

16

12. Not only do I still have personal memory of this meeting that occurred on March 29, 2004, but the Invoice for Professional Services Rendered confirms that this meeting did occur on March 29, 2004 and that Mr. Watters and I discussed "escrow and title issues," which are the subject areas referenced above in numerical paragraph 9 . . . .[9]

Thus, Attorney Wexler's affidavit establishes that Mr. Watters had knowledge of the title defects and Attorney Wexler's failure to correct them immediately prior to the closing of the subject property. Even understanding the outstanding title issues, Mr. Watters chose to complete the closing of the Dent Road property. There is no dispute in this case that knowledge possessed by Mr. Watters is imputed to Dent Road and its other partners. *See* Tenn. Code Ann. § 61-1-102 ("A partner's knowledge, notice, or receipt of a notification of a fact relating to the partnership is effective immediately as knowledge by, notice to, or receipt of a notification by the partnership, but is not effective as such if the partner committed or consented to a fraud on the partnership.").[10] This evidence therefore satisfies Appellees' burden of production to show that the knowledge element of the discovery rule was met, at the latest, on March 31, 2004, when Appellees closed on the subject property despite purported knowledge that the title issues had not been resolved.

The burden of production therefore shifted to Appellants to present sufficient evidence to create a genuine issue of material fact on this issue. *Rye*, 477 S.W.3d at 264–65. As our supreme court has explained:

"[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* [*Ltd. v. Zenith Redio Corp.*], 475 U.S. [574,] 586, 106 S.Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been

---

[9] A copy of the invoice was attached as an exhibit to the affidavit.

[10] Dent Road's partnership agreement specifically states that the partnership is formed under the Tennessee Uniform Partnership Act, Tennessee Code Annotated section 61-1-101 et seq.

17

provided, summary judgment should be granted if the nonmoving party's evidence at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Id.* at 465.

Here, in responding to the portion of Appellees' statement of undisputed material facts that concerns the March 29, 2004 meeting, Appellants cited portions of Mr. Watters's second affidavit.[11] In relevant part, the affidavit states:

14. Based on the counsel from Jason Wexler that the issue[s] were minor in nature, I had no reason to believe there was any material issue with title or the closing proceeding as planned.

15. The issues disclosed in the March 23 and March 28, 2004 emails are not the title defects which form the basis of this litigation and render title unmerchantable at the time of closing.

16. At the time of purchase, I believed Dent Road GP was receiving good and merchantable title pursuant to the terms of our purchase contract.

17. I signed the closing documents on behalf of Dent Road GP and a personal guarantee to the lender financing the transaction under the belief that title was good and when the time came, Dent Road GP could sell the property.

18. I trusted Jason Wexler and his firm to conduct the closing transaction according to the terms of our purchase contract.

19. I trusted that if title was not good and merchantable so as to endanger our ability to sell the property when the time came, Jason Wexler and his firm would alert us as such. I was not alerted.

\* \* \*

---

[11] Mr. Watters filed two affidavits in this case, one affidavit in response to the initial motion for summary judgment and a second affidavit following the Mr. Watters's deposition and the renewed motion for summary judgment. Although only the second affidavit is specifically cited in response to Appellees' renewed motion for summary judgment, we consider both affidavits for purposes of this appeal.

21. Jason Wexler did not spend a significant amount of time explaining the closing documents nor did he explain the nature and scope of the title defects in sufficient detail as to alert me that title to the property was not marketable.

22. Jason Wexler did not advise me not to purchase this property.

23. Jason Wexler did not state that the possibility would arise that I could not sell this property in the future until the title defects were resolved.

Mr. Watters's first affidavit generally tracked the second affidavit's assertion that Mr. Watters was not provided notice of the title defects.

Appellees dispute these affidavits and contend that they do not create a genuine dispute of material fact because they do not specifically address the March 29, 2004 meeting. Indeed, although the meeting is not discussed in Mr. Watters's affidavits, Appellants do not dispute that this meeting took place. As such, Appellees contend that this court should look to Mr. Watters's deposition testimony to determine whether a dispute of material fact exists as to what was discussed during the meeting.

In particular, Appellees point to the following portion of the deposition:

Q. . . . What conversations did you have with Jason Wexler about this closing in 2004 at any time?

A. The only conversation I remember having with Jason was he called and said there were . . . minor issues with stuff that he was, you know, working on.

Q. That was before the closing, right?

A. Yes.

Q. Now, he didn't explain the minor issues to you?

A. . . . I don't . . . recall.

Q. So you're not saying he didn't; you're just saying you don't remember what he did or he didn't do?

A. That's . . . I don't recall. I don't know.

According to Appellees, this testimony shows that Mr. Watters does not deny that the March 29, 2004 meeting took place as described by Attorney Wexler but only that he cannot recall the meeting.

We agree that Mr. Watters's deposition testimony is insufficient to create a genuine dispute regarding Attorney's Wexler's unequivocal affidavit testimony that the unresolved title issues were made known to Mr. Watters prior to the closing. A genuine issue of material fact is generally defined as "'a triable . . . or real question of fact supported by . . . evidence.'" ***Aurora Loan Servs., LLC v. Woody***, No. W2014-00761-COA-R3-CV, 2014 WL 7463032, at \*9 (Tenn. Ct. App. Dec. 30, 2014), *perm. app. denied* (Tenn. June 16, 2015) (quoting *Black's Law Dictionary* 756 (9th ed. 2009)). Rather, Mr. Watters's statement that he cannot recall the March 29, 2004 meeting or its contents, particularly where this meeting is undisputed, is insufficient to meet Appellants' burden to create a triable issue regarding the  existence of this meeting or what was discussed therein.

Although Mr. Watters's deposition testimony is insufficient to create a material fact on the issue of the March 29, 2004 meeting, we must also consider the effect, if any, of Mr. Watters's affidavits on this question. This court has previously addressed the situation wherein a later-filed affidavit appears to conflict with deposition testimony:

> The authors of Federal Practice and Procedure have addressed conflicts between deposition testimony and a later-filed affidavit:
>
> > Although some courts have ruled that conflicts between depositions and later-filed affidavits present questions of credibility, precluding summary judgment, several courts have suggested that summary judgment may be granted under those circumstances, or that the affidavit may be disregarded or stricken as sham.
>
> 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2726, at 448–50 (3d ed. 1998) (footnotes omitted). However, the authors go on to state that
>
> > [i]t seems quite clearly correct to conclude that an interested witness who has given clear answers to unambiguous questions cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, without providing a satisfactory explanation of why the testimony is changed. If such an explanation is proffered, a credibility question is presented; without it, there are no facts suggesting why a credibility question exists and the nonmoving party should not be allowed to manufacture a question of fact to delay resolution of the suit.
>
> *Id.*[] at 452 (footnotes omitted).

***Sampson v. Wellmont Health Sys.***, 228 S.W.3d 124, 135 (Tenn. Ct. App. 2007). Consequently, this situation involves two questions: (1) whether affidavits and deposition testimony actually conflict; and (2) whether the inconsistency is satisfactorily explained. ***Id.***

We conclude that Mr. Watters's affidavits do not create a material issue of fact on this issue. First, as discussed above, neither of Mr. Watters's affidavits specifically address the March 29, 2004 meeting. As such, the affidavits do not conflict with Mr. Watters's testimony that he simply cannot recall, and therefore cannot dispute, what was discussed at the March 29, 2004 meeting as testified to by Attorney Wexler. Without specifically noting the date of the contact, the second affidavit does state, however, that Attorney "Wexler did not spend a significant amount of time explaining the closing documents nor did he explain the nature and scope of the title defects in sufficient detail as to alert me that title to the property was not marketable." Likewise, both affidavits generally indicate that Mr. Watters was provided no notice of the title defects prior to the closing.

These statements, however, do little to undermine Attorney Wexler's affidavit testimony concerning the March 29, 2004 meeting. Appellants do not dispute that the March 29, 2004 meeting between Mr. Watters and Attorney Wexler took place, despite the fact that Mr. Watters testified that his only contact with Attorney Wexler prior to the closing was by phone. Although Mr. Watters's affidavits indicate that the title defects were not properly communicated to Mr. Watters, Mr. Watters was unable to recall, and therefore unable to deny, that the March 29, 2004 meeting took place as described by Attorney Wexler. Thus, Mr. Watters's affidavit testimony that the title defects were never communicated to him must be considered in conjunction with his unfortunate inability to remember the March 29, 2004 meeting, which Appellants admit took place. Attorney Wexler's testimony that the title defects were sufficiently communicated to Mr. Watters on March 29, 2004 therefore must be considered undisputed for purposes of Appellees' motion for summary judgment.[12]

In sum, Appellees met their burden of production to show that the outstanding title defects were communicated to Mr. Watters on March 29, 2004 and that Mr. Watters, knowing of the defects, went ahead with the closing. Appellants failed to meet their burden of production to "demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find" that the meeting did not take place as described by Attorney Wexler. ***Rye***, 477 S.W.3d at 265. The undisputed facts therefore establish that Mr. Watters knew or should have known that the title defects had not been corrected

---

[12] In any event, even were we to conclude that the deposition and affidavits conflict, Mr. Watters provided no explanation for the inconsistency. As such, the conflicting affidavits would be insufficient to create a genuine dispute of material fact.

by Attorney Wexler, at the latest, on March 31, 2004, at the closing of the Dent Road property. These facts were "sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct." **Story**, 538 S.W.3d 464 (quoting **Kohl**, 977 S.W.2d at 533). Appellant's cause of action therefore accrued on March 31, 2004. Given that Appellant's initial complaint was filed more than one year following the accrual of the cause of action, the trial court did not err in granting summary judgment as to all claims predicated on legal malpractice.[13]

## II.

Appellants next argue that notwithstanding the expiration of the legal malpractice statute of limitations, the trial court erred in "inexplicably" granting summary judgment as to all claims against Chicago Title. We agree.

Here, Appellants filed a twenty-count amended complaint. Each defendant thereafter filed a motion for summary judgment;[14] the trial court eventually denied the motions in a single order, ruling that disputes of material fact remained. Attorney Wexler and Hanover Walsh thereafter filed a renewed motion for summary judgment, arguing that any legal malpractice claim was barred by the statute of limitations. Chicago Title filed a joinder of that motion but did not file a separate motion or in any way renew their earlier motion.[15] According to the parties, the joinder specifically asked that only some of the counts alleged in the amended complaint be dismissed. In its later order granting summary judgment, the trial court ruled only that the one-year statute of limitations applicable to claims of legal malpractice had expired prior to the initiation of the suit. Despite this fact, the trial court specifically stated that the grant of summary judgment constituted "a final adjudication on the merits as to the Defendants . . . Chicago Title Insurance Company."

On appeal, Appellants assert that this was error, as only the issue of the legal malpractice statute of limitations was before the trial court when it granted summary judgment. Chicago Title concedes that the trial court's order makes no specific findings as to any claims other than for legal malpractice. Instead of conceding error, Chicago Title asks this Court to perform a series of legal gymnastics to parse Appellant's amended

---

[13] In their brief, Appellants state that "[t]o the extent that Chicago Title argues that it should not be held liable for attorney negligence of Appellees Wexler and Hanover [Walsh], Appellants agree and do not make such an assertion in the Amended Complaint or here on appeal." As such, it appears that Appellants do not take issue with the trial court's decision to grant summary judgment to Chicago Title as to any and all legal malpractice claims.

[14] Only the motion filed by Attorney Wexler and Hanover Walsh is included in the record on appeal. The parties do not dispute this procedure.

[15] The joinder does not appear in the record; again, the parties do no dispute the procedure that occurred in the trial court.

complaint to determine whether summary judgment was nevertheless appropriate. For example, with regard to one claim, Chicago Title argues the following,

> Although it is not stated in the [order], the logical reason why the trial court could have dismissed all claims against Chicago Title is because the trial court . . . could well have concluded that no issues remained unsettled that prevent Chicago Title to be dismissed with respect to all claims for relief against it.

Respectfully, we decline Chicago Title's invitation to engage in speculation concerning the trial court's undisclosed motives for the grant of summary judgment.

The Rules of Civil Procedure expressly require that the trial court state the grounds for any grant or denial of summary judgment. Tenn. R. Civ. P. 56.04 ("The trial court shall state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the court's ruling."). While this Court may sometimes affirm the trial court's grant of summary judgment on different grounds than those stated, *see City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 60 n.18 (Tenn. Ct. App. 2004), we have been directed by our supreme court that an archeological dig of the record to support a trial court's action is not required. *See generally Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 314 (Tenn. 2014). Rather, the Tennessee Supreme Court has stated that a trial court's order granting or denying summary judgment must be the product of the trial court's independent judgment. *Id.* As such, we have more recently declined to rule on issues that were not expressly addressed by the trial court. *See Mid-S. Maint. Inc. v. Paychex Inc.*, No. W2014-02329-COA-R3-CV, 2015 WL 4880855, at *14 (Tenn. Ct. App. Aug. 14, 2015) ("Generally, when the trial court fails to address an issue in the first instance, this Court will not consider the issue, but will instead remand for the trial court to make a determination in the first instance.").

Here, the trial court's written order contains legal reasoning only surrounding the legal malpractice statute of limitations. Following our review, we have affirmed the dismissal of all claims predicated on legal malpractice. Although Chicago Title urges this Court to affirm the dismissal of all other claims against Chicago Title, the trial court's ruling is silent as to these claims; further, Chicago Title's initial motion for summary judgment in which it raised arguments concerning the claims against it is not included in the appellate record.[16] As such, we are unable to determine what issues were properly raised in the trial court, and we decline to review these issues. *Cf., Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991) (holding that issues must be

---

[16] Appellants, Attorney Wexler, and Hanover Walsh engaged in a dispute over the record, with the trial court eventually accepting Attorney Wexler and Hanover Walsh's designation of the record. Nothing in this record suggests that Chicago Title objected to the record as designated.

properly raised in the trial court to be considered on appeal). The parties agree on appeal, however, that Counts I through VII were properly dismissed as to Chicago Title. To the extent that any additional counts were dismissed against Chicago Title by the trial court's grant of summary judgment, the trial court's ruling is vacated. The parties are free to renew their arguments concerning the propriety of these claims upon remand.

## III.

The judgment of the Chancery Court of Shelby County is affirmed in part, vacated in part, and remanded for further proceedings. Costs of this appeal are taxed one-half to Appellants Joseph Higdon, Tab Watters, Robert L. Knight, Michael R. Mayer, and Dent Road General Partnership, and one half to Appellee Chicago Title Insurance Company, for all of which execution may issue if necessary.

_____

J. STEVEN STAFFORD, JUDGE